UNITED STATES of America, Plaintiff–Appellee,

v.

Gary LOWIS, Defendant–Appellant.

No. 98–2727.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 5, 1999.

Decided April 19, 1999.

---

Timothy A. Bass (argued), Office of the United States Attorney, Springfield, IL, for Plaintiff–Appellee.

Jon G. Noll, Jeffrey T. Page (argued), Springfield, IL, for Defendant–Appellant.

Before HARLINGTON WOOD, JR., FLAUM, and MANION, Circuit Judges.

HARLINGTON WOOD, JR., Circuit Judge.

Defendant Gary D. Lowis appeals his conviction on a single count indictment charging him with possession of a controlled substance, namely, amphetamine and marijuana, with intent to distribute in violation of 21 U.S.C. § 841(a)(1).[1]

---

1. Lowis was sentenced on July 6, 1998 to a term of 168 months incarceration to be fol-

First, the defendant objects to certain evidentiary rulings, any one of which he claims merits a new trial. In any event, he argues the cumulative effect of these claimed incorrect evidentiary rulings compels reversal. The defendant recognizes that he has a heavy burden in challenging a trial court's evidentiary rulings on appeal, because "a reviewing court gives special deference to the evidentiary rulings of the trial court." *United States v. Briscoe*, 896 F.2d 1476, 1489–90 (7th Cir.1990) (citation omitted). Our standard of review when determining if the district court committed reversible·error in admitting or excluding evidence is for an abuse of discretion. *United States v. Whitaker*, 127 F.3d 595, 601 (7th Cir.1997) (citation omitted).

Secondly, Lowis questions the sufficiency of the evidence. Again he has a heavy burden. He must convince this court that no rational trier of fact, after viewing the evidence in the light most favorable to the government, could have found the essential elements of the crime beyond a reasonable doubt in order to convict the defendant. *United States v. Pribble*, 127 F.3d 583, 590 (7th Cir.1997) (citations omitted). In *United States v. Hickok*, 77 F.3d 992, 1002 (7th Cir.1996), we described the defendant's burden in challenging the sufficiency of the evidence as "nearly insurmountable."

Underlying the evidentiary issues is the defendant's claim that this case, if anything, is no more than the possession by him of a controlled substance for purposes of his own consumption, without any intent to distribute to others. The defendant further claims that over his objections, the government tried this case as if a conspiracy had been charged so as to permit the government to broaden its basis of admissible evidence.

The defendant has made a good, but unsuccessful, effort to overcome his burdens relating to these issues. Therefore,

we must affirm. In view of the evidentiary issues raised, however, some detail is necessary to explain that conclusion.

## Background

The events in this story take place in and around the small town of Palmer in central Illinois where the defendant resided in a rented house. His former girlfriend, Becky Clayton, occupied a trailer in the backyard of the property. The drug trail leading to the defendant, however, actually originated in Oklahoma in 1995. Brenda Holmes, the wife of Earl Holmes, both of whom resided in Oklahoma, was interviewed by Oklahoma agents of the Drug Enforcement Administration (DEA). She revealed that her husband had been transporting two to four pound quantities of methamphetamine to a resident of Palmer, Illinois on a monthly basis. Whenever her husband made that trip, she said, he stayed at a particular Holiday Inn near Palmer. Agents in Illinois followed up on that information by obtaining the Holiday Inn records. The records showed that Holmes had stayed at the hotel on various occasions and that calls had been placed from Holmes' hotel room to defendant's Palmer residence.

Thereafter, in April 1996, a Holiday Inn clerk notified the Illinois State Police and the DEA that Holmes had again checked in. The agents quickly responded and identified Holmes' truck at the hotel. A drug dog of the canine unit later alerted on the truck. During the agents' surveillance, Holmes and his wife were seen to come out of the hotel, get in their truck, and drive down the highway in the general direction of Palmer. Along the way the agents stopped them and executed a search warrant for the truck. That search turned up over $29,000 in cash stashed behind the driver's seat and an additional $14,000 in cash hidden under the hood. Mrs. Holmes consented to the search of her purse in which small amounts of meth-

lowed by three years supervised release. The

sentence is not contested on appeal.

amphetamine and marijuana were found and seized.

Later that day the agents executed a search warrant for the defendant's residence in Palmer. When the agents arrived they saw Brian Nation, later identified as defendant's nephew, run across the backyard and try to hide under Clayton's trailer. In addition to finding Nation under the trailer, the agents found six plastic baggies containing 647 grams of marijuana and a thermos bottle containing 64.4 grams of amphetamine, a plastic baggie with approximately 33 grams of marijuana and additional empty plastic baggies. Also found was an electronic scale, a plastic smoking pipe, and some personal effects of Debbie Beck, the defendant's girlfriend at that time.

While executing the warrant, agents found defendant inside the house along with his current girlfriend, Debbie Beck, and also his former girlfriend, Becky Clayton, who lived in the trailer behind the house. It was from their company that Nation, the nephew, had quickly departed to try to hide under Clayton's trailer. The search of the house resulted in the seizure of a 9mm handgun, a loaded .38 Derringer pistol, two night vision scopes, and miscellaneous items including baggies of amphetamine and of marijuana, in addition to some papers recording apparent drug sales along with Holmes' Oklahoma phone number. There was also an empty bottle of ephedrine, a precursor chemical for the manufacture of methamphetamine and amphetamine. The search warrants were not challenged.

In October 1997, defendant was charged in a complaint with possession of amphetamine and marijuana with intent to distribute and was arrested in Lincoln, Illinois as he was leaving the residence of Randy Melvin. The defendant was in his car with Debbie Beck and another man at the time he was arrested. The agents also arrested Randy's brother, Keith Melvin, who was sought on a Missouri warrant. Subsequently, during a search of the defendant's car, as well as the car and residence of Randy Melvin, a quantity of methamphetamine along with other items used to produce methamphetamine were seized. The district court, however, granted the defendant's motion in limine to exclude the evidence connected with the events in Lincoln.

After those searches and defendant's arrest, agents interviewed the defendant and attempted to obtain his cooperation in identifying Earl Holmes as his source for methamphetamine. The defendant declined to cooperate unless he got a "free ride," stating he feared retaliation by Holmes.

*Evidentiary Rulings*

The government argues preliminarily that the challenged evidentiary rulings were waived as they were "for the most part perfunctory and undeveloped," and not supported by pertinent authority, citing *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir.1991). *Berkowitz* is sound law but, under the circumstances of this case, the waiver argument is so intertwined with the merits that we will give the defendant the benefit of the waiver doubt and proceed to consider the claims on their merits. Therefore, assuming the defendant's arguments were preserved, we will give particular deference to the rulings of the trial court and will reverse only if there has been an abuse of discretion. *Whitaker*, 127 F.3d at 601.

■ First, Lowis argues that the district court erred in admitting the testimony of the conversation the agents had with him after his Lincoln arrest when they were seeking his cooperation in naming his drug sources. This was the conversation where defendant declined to cooperate unless he got a "free ride." The government argues that the testimony was properly admitted since it implied defendant's consciousness of guilt. We need not, however, examine the district court's initial ruling admitting that conversation as the district

court subsequently instructed the jury to disregard that portion of the government's evidence.

As mentioned previously, the district court had granted defendant's motion in limine to eliminate evidence of the other events occurring in Lincoln, Illinois. The objected-to admissions of defendant's "consciousness of guilt" conversation with the agents were an aftermath of the Lincoln events. The defendant argues that the admitted statements were so prejudicial to him that in spite of the district court's best efforts with its curative instruction for the jury to disregard that evidence, as a practical matter it was impossible to "unring the bell."

In our judgment, viewed in the context of all the evidence, even if initially admitted in error, that particular evidence was not a very "loud bell." The defendant has presented no evidence to convince us that this evidence was overwhelmingly prejudicial. *See United States v. Shukitis*, 877 F.2d 1322, 1329 (7th Cir.1989); *United States v. Catalano*, 450 F.2d 985, 990 (7th Cir.1971). The district court's instruction was adequate to "unring" this bell. We have no reason to assume that the jury disregarded the court's instruction. *See Shukitis*, 877 F.2d at 1329. A curative jury instruction is a very practical and useful way, in many circumstances, for the trial court to have an immediate opportunity to correct its own perceived errors before it is too late.

"Unring the bell" is a good analogy which can save a lot of words in making the point. That phrase originated, as far as we can find, in *Sandez v. United States*, 239 F.2d 239, 248 (9th Cir.1956), and was elaborated on in *Dunn v. United States*, 307 F.2d 883, 886 (5th Cir.1962), which added other pertinent analogies. "After the thrust of the saber it is difficult to forget the wound," was another, and then the most colorful one of all, "If you throw a skunk into the jury box, you can't instruct the jury not to smell it." *Dunn*, 307 F.2d at 886. In the present case there was no skunk thrown in the jury box. As also mentioned in *Dunn*, "Trials are rarely, if ever, perfect, but gross imperfections should not go unnoticed." *Id.* We find no gross imperfections which would overpower the district court's instruction to the jury to disregard Lowis' statement.

■ Next, the defendant claims that the district court erred in admitting the evidence of the large amount of money that was found hidden in Holmes' truck when it was searched pursuant to a warrant. In addition, the defendant argues that the admission of the Holiday Inn records concerning Holmes' previous monthly trips was erroneous. Both the money and the hotel records were tendered under Federal Rule of Evidence 404(b) as proof of the defendant's motive, intent, knowledge, and plan. The money seized when Holmes was traveling in the general direction of the defendant's residence and the hotel records reflecting ongoing contact between Holmes and the defendant were relevant as part of the prior acts evidence. The court gave the jury a limiting instruction adequate to confine the "other acts evidence" to its limited purposes. That was sufficient. There was no abuse of discretion resulting in reversible error.

■ The district court also admitted the testimony of a special agent who explained to the jury the process of manufacturing methamphetamine and amphetamine. The defendant labels this evidence irrelevant as the defendant had not been charged with manufacturing drugs. The defendant was charged with possessing amphetamine and marijuana with the intent to distribute, whereas the prior acts testimony related only to methamphetamine. The special agent's testimony explained that amphetamine and methamphetamine are produced by a chemical process and that ephedrine is one of the chemicals used to produce both drugs.

The agent explained that methamphetamine and amphetamine have an identical appearance as the only difference is chemi-

cal. Therefore, a person may not know whether the substance is one or the other. The testimony appears to be merely an effort by the government to educate and help the jury generally understand about the substances involved in the context of this case. *Cf. Whitley v. Seibel*, 676 F.2d 245, 251 (7th Cir.1982). The government likely could have made its case with less jury education and just left the jury wondering, but we see no error.

■ The last specific evidentiary error charged by the defendant was the admission of evidence concerning the small amount of methamphetamine and marijuana found in the purse of Brenda Holmes when she consented to its search. Even if we assume that to be error, it could not, in the context of the other evidence, prejudice the defendant and could not affect any of his substantial rights; it was harmless error. Fed.R.Crim.P. 52(a). That bit of purse evidence could not have substantially or adversely affected the jury's verdict. *See United States v. Moore*, 115 F.3d 1348, 1358 (7th Cir.1997). There was no abuse of discretion by the trial judge and thus no reversible error.

### Sufficiency of Evidence

■ Defendant argues that the government did not produce enough evidence of guilt to permit a rational jury to find the defendant guilty of the charges of possession of amphetamine and marijuana with intent to distribute. In part, the government's evidence included the seized drugs, a scale, and papers denoting apparent drug sales, all recovered during the search of defendant's house. The defendant's involvement with Earl Holmes showed where defendant's drugs had come from. The records, scale, the supply of baggies, and the amount of drugs in his possession, along with his other actions, showed defendant's intent not merely to possess the drugs for personal use but to distribute. Under the *Pribble* standard, the defendant failed to show that no rational trier of fact could have found that the evidence pre-

sented by the government proved the elements of the crime beyond a reasonable doubt. *See Pribble*, 127 F.3d at 590. If there remained any doubt about Lowis' guilt as charged, it could not be a reasonable doubt.

The district judge was well aware of the possibility of this trial slipping into a conspiracy trial, which it was not. He guarded against it as well as any trial judge could and avoided error.

We find no reversible error and therefore affirm the defendant's conviction.