Nathan A. JONES, Appellant–Defendant,

v.

STATE of Indiana, Appellee.

No. 48A02–9201–CR–21.

Court of Appeals of Indiana,
Second District.

Dec. 23, 1992.

David W. Stone, IV, Anderson, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Deana M. McIntire, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Appellant Nathan A. Jones was convicted of Battery by means of a deadly weapon, a Class C felony.[1] His appeal presents the following issues for review:

I. Whether the trial court erred in permitting the investigating officer to testify regarding the difficulty he had experienced in getting witnesses to cooperate in the area in which the crime was committed; and

II. whether the court erroneously failed to give Jones credit for his pre-trial detention?

We affirm.

James Granger, the victim, was present in the El Morocco bar in Anderson on the evening of January 7, 1990. Granger had words with Jones's brother David at around 1:30 a.m., and David asked Granger to step outside. Granger did so, and a fight ensued between the two. During the fight, Jones approached Granger from behind and stabbed him in the back with a knife. The stabbing resulted in a one inch wide, two and one-half inch deep laceration.

Between ten and twenty-five people witnessed the fight. At trial, the State called two witnesses in addition to Granger to testify concerning the events. Later during its case in chief, the State sought to ask the investigating officer, Detective Rodney Cummings, whether he had experienced difficulties in the past in getting African–American witnesses in the part of town including the El Morocco to cooperate with the State. Over Jones's objection, Cummings testified that he found it difficult to find witnesses in the African–American community who were willing to come into court and testify on behalf of the State.

Jones challenges the trial court's admission of Cummings's testimony. He argues that the State's failure to call the remaining witnesses raised an inference that their testimony would have been unfavorable to the State's case, and that it was error for the trial court to allow Cummings's testimony to rebut this inference.

Evidence is relevant if it tends to prove or disprove a material fact or shed any light upon the guilt or innocence of the defendant. *Davidson v. State* (1990) Ind., 558 N.E.2d 1077, 1088. Relevant evidence is inadmissible, however, when its probative value is substantially outweighed by the danger of unfair prejudice. *Warner v. State* (1991) Ind., 579 N.E.2d 1307, 1310. The decision whether to admit relevant evidence is within the discretion of the trial court. *Hunter v. State* (1991) Ind., 578 N.E.2d 353, 357.

In the instant case, Jones admits, and we agree, that Cummings's testimony was relevant to rebut the inference that the State was not presenting the testimony of the other witnesses to the crime because their testimony would have been unfavorable to its case. Jones appears to argue, however, that admission of the testimony was prejudicial, analogizing the testimony to the admission of statistical evidence to convict a defendant in lieu of evidence directly implicating him. *See, e.g., Davis v. State* (1985) 2d Dist. Ind.App., 476 N.E.2d 127, 134–139, *trans. denied.* We find Jones's analogy to be inapt. Detective Cummings was not asked to offer nor did he offer statistics or estimates based upon statistical methods. Rather, he testified as to his past experience in getting cooperation from witnesses in a particular part of town in which he regularly worked.

We see no particular grounds for concluding that Detective Cummings's testimony was unfairly prejudicial. There is no unfair prejudice in presenting evidence that questioning additional witnesses was unlikely to lead to further information in order to rebut the negative inference suggested by Jones. Jones had at his disposal the power of subpoena, and could have called any of the potential witnesses to testify. Ind. Trial Rule 45. Jones cannot claim that the State was obligated to call every witness to the crime, or that the

1. I.C. 35–42–2–1(3) (Burns Code Ed.Supp.1992).

State was obligated to fully question every witness even after satisfying itself that the case against him could adequately be made. The trial court did not abuse its discretion in admitting Cummings's testimony.

■ Additionally, we note that Jones opened the door to the testimony in his cross-examination of Police Officer Kevin Early and Granger. Otherwise inadmissible evidence becomes admissible when the defendant himself presents evidence to put the question in issue. *Russell v. State* (1991) Ind., 577 N.E.2d 567, 569.

■ Officer Early investigated the scene shortly after the incident occurred. Upon cross-examination, Jones had Officer Early's investigation report admitted into evidence. The report showed that he had talked to two people in the El Morocco. Jones then asked Officer Early whether a number of people had been present when he was investigating the scene and whether he took any additional investigative steps regarding the matter, thus raising the inference that Officer Early had avoided other potential witnesses. Later, during Jones's cross-examination Granger, Jones asked him whether other people would have had a clear enough view of the events to be able to corroborate his version of the facts. By affirmatively raising the inference in his cross-examination, Jones opened the door to Cummings's rebuttal testimony, and cannot now object.

■ Even if the evidence of prior difficulty in obtaining State witnesses from the African–American community were considered as wholly irrelevant to the particular incident here involved, such error would be deemed harmless.

In his appeal, Jones does not even hint that the incident did not occur or that it occurred in any manner other than as described by the witnesses who did testify. The arguable inference that uncalled witnesses would have given testimony unfavorable to the State, is therefore totally dispelled. There is no basis for reversal in the admission of Cummings's rebuttal testimony.

Jones also asserts that the trial court failed to give him credit for his pre-trial detention. However, his claim is factually incorrect and appears to be based upon a misunderstanding occasioned by the incompleteness of the record assembled by the Clerk of the Madison Superior Court.

In response to a timely filed praecipe, the Clerk collected a record of the proceedings, which included the Court's chronological summary of filings and proceedings for the cause number, but did not include the Abstract of the Judgment and Sentencing Order. The chronological case summary did not give any indication that Jones had been given credit time for his pre-trial detention. Appellate counsel apparently assumed upon this basis that no such credit had been given, and appealed the trial court's supposed failure to credit the time to Jones's sentence.

■ In order to determine what actually happened in the court below, by writ of certiorari pursuant to Ind. Appellate Rule 7.2(C)(2), we ordered the Madison Superior Court to certify the Abstract of Judgment and Sentencing Order. In this regard, we note that we are not *required* to order the production of missing portions of the record; however, we *may* do so at our option. *Adams v. State* (1989) 4th Dist. Ind.App., 539 N.E.2d 985. The Abstract of the Judgment reveals that Jones was given fifty-six days credit for pre-trial detention. Therefore, no issue of pre-trial detention is before us.[2]

---

**2.** We take this opportunity to note that this case serves as an example of the failure of our system to provide clear and uniform standards so that trial court clerks may know what information should be included in the chronological case summaries and how it should be recorded. Presently, different courts record events with their own various shorthand codes, and include (or exclude) different types of information. This non-uniformity inevitably leads to confusion. Thus, in the instant case, the clerk's failure to record the pre-trial detention credit led Jones's appellate counsel to conclude that none was given, since the amount of pre-trial detention credit given would normally be stated in the case summary.

Case summaries are ostensibly prepared and kept for the benefit of those persons, i.e., the attorneys and judges, involved in the case throughout the trial and appellate process. The

The judgment of the trial court is affirmed.

BUCHANAN and ROBERTSON, JJ., concur.

summaries should be consistent, understandable, and easy to use by those persons. Appellate attorneys and judges simply cannot familiarize themselves with the varying practices of each individual county clerk. Therefore, trial court clerks should have uniform standards to guide them with respect to those aspects of the trial proceedings which should be recorded in the chronological case summaries.

Ind. Trial Rule 77(B) states that the Chronological Case Summary is a "sequential record of the judicial events. . . ." It further states that the "[n]otation of judicial events . . . [shall] briefly define any documents, orders, rulings, or judgments. . . ." One might assume, albeit erroneously, that the "brief definition" of a sentencing order which included jail-time credit would include a reference to that jail-time credit. In any event the need for some uniformity in making such entries is obvious.

Although we have no reason to conclude that appellate counsel in the instant case was or should have been aware of the defect in the instant case summary, we remind appellate attorneys in general that they would do well to familiarize themselves with the actual rulings, orders, and judgments in the appeals they handle.

Individual county clerks may or may not include in the record of proceedings, a verbatim recitation of all pertinent orders, rulings, and judgments even though T.R. 77(C) requires a copy of such to be maintained in the Case File. Until such time as the county clerks are able to standardize their record keeping and certification practices, it would be well for appellate counsel to review the Case File to make sure that requisite rulings, orders, and judgments are contained within the certified record of proceedings, and are at least referred to in the Chronological Case Summary.