**Melvin Jean PALMER, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 41A04–9404–CR–140.**

Court of Appeals of Indiana, Fourth District.

Sept. 20, 1994.

---

Richard L. Tandy, Greenwood, for appellant.

Pamela Carter, Atty. Gen., Jodi Kathryn Rowe, Deputy Atty. Gen., Indianapolis, for appellee.

RILEY, Judge.

## STATEMENT OF THE CASE

Defendant–Appellant Melvin Jean Palmer (Palmer) appeals from his conviction of child molesting. We affirm.

## ISSUES

Palmer presents three issues for our review which we restate as follows:

1. Whether the trial court erred when it denied Palmer's motion for a mistrial.

2. Whether the trial court erred when it permitted the State to present rebuttal witnesses.

3. Whether the trial court committed fundamental error by permitting various defense character witnesses to testify on cross-examination regarding Palmer's specific acts of prior misconduct.

## FACTS AND PROCEDURAL HISTORY

In December, 1991, Palmer took his three grandchildren[1] to the Aldi Grocery Store in New Whiteland, Indiana. After shopping, he took the then 5½ year old victim C.P. into the bathroom and locked the door. The other children were waiting in the hallway. Palmer instructed C.P. to bend over and pull down his pants and proceeded to sodomize him. Palmer told C.P. that if he told anyone about what happened, he would beat him up. (R. 229). Despite Palmer's threats, C.P. told his grandmother the following night.

On January 14, 1992, Palmer was charged by information with child molesting, a class B felony.[2] Palmer was found guilty by a jury and sentenced to 10 years incarceration.

## DISCUSSION AND DECISION

### I. Mistrial/Order in Limine

Palmer contends that the trial court erred when it denied his motion for a mistrial. Palmer moved for a mistrial after a State's witness testified regarding a topic excluded in a pre-trial order in limine. Palmer filed a pre-trial motion in limine seeking to exclude evidence of his involvement in other possible molestations with T.P. and Z.P., C.P.'s sister and brother. Palmer filed an amended motion in limine seeking to further exclude any evidence of unrelated incidents of molestation involving the victim, C.P. Palmer relied on *Lannan v. State* (1992), Ind., 600 N.E.2d 1334, in support of his motion. The trial court denied Palmer's motion "in regard to any testimony or reference to an act of misconduct which was part of the res gestae of the crime charged." (R. 84). However, the court granted the motion as to all other issues. Thus, with regard to prior unrelated incidents of molest of C.P., the motion in limine was granted.

Further, outside the presence of the jury and prior to the evidentiary portion of the trial, the court heard testimony by C.P., the victim, and heard additional argument on defense's motion in limine. C.P., then 7 years old, testified that Palmer took him into the bathroom at Aldi's and sodomized him. He further testified that Palmer then brought his little brother, Z.P. then age 3, into the bathroom and told him to "[l]ean over and pull down his pants." C.P. testified that his dad "done the same thing [to Z.P.] that he done to me.... he stuck his penis in our butts." (R. 201). The court ruled from the bench that it would allow testimony in regard to the alleged incident with Palmer and Z.P. because it took place immediately after the incident with C.P. and was therefore part of the res gestae. The court then said that the portion of the motion in limine regarding prior bad acts remained in effect.

Dr. Roberta Hibbert, a pediatrician specializing in the area of child sexual abuse,

---

1. Ellen Palmer, Melvin Palmer's wife, was awarded custody of her daughters' three children; C.P., T.P., and Z.P. Thus, although technically the children were Melvin Palmer's step-grandchildren, the children referred to the Palmers as their mother and father.

2. IND.CODE 35–42–4–3 (1993 Supp.).

evaluated C.P. in the child sexual abuse clinic at Wishard Hospital in January, 1992. C.P. was referred to the clinic for a medical evaluation for alleged sexual abuse. On direct examination, Dr. Hibbert testified that her physical examination of C.P. revealed indications consistent with the allegation of sexual abuse. During cross-examination of Dr. Hibbert, defense counsel asked her approximately when this incident of molest took place. Dr. Hibbert testified "[t]he allegations as we understood them,—was that they had been occurring for approximately two years." (R. 293). Palmer moved for a mistrial arguing that this testimony was in violation of the in limine ruling excluding any evidence of unrelated prior acts of molest concerning C.P.

Dr. Hibbert had not been advised of the existence of the court's in limine ruling. The trial court found that the order in limine had been violated, but that it did not merit a mistrial. The court denied the mistrial and admonished the jury as follows:

[L]adies and gentlemen, before the break there was a question asked of the doctor, "do you know by reviewing your report approximately when this incident took place", and the—the response to that was not a proper answer and I am ordering it stricken from the record and you should disregard that answer to that question if in fact you do remember it....

(R. 322).

The trial court has wide discretion in determining whether to grant a mistrial, and its decision is afforded great deference on appeal because the trial court is in the best position to gauge the surrounding circumstances of the event and its impact on the jury. *Reynolds v. State* (1993), Ind.App., 625 N.E.2d 1319, 1321, *trans. denied*. To prevail on appeal, appellant must show that he was so prejudiced that he was placed in a position of grave peril to which he should not have been subjected. *Id.* We will not reverse a trial court's ruling on a motion for mistrial absent an abuse of discretion. *Wright v. State* (1992), Ind., 593 N.E.2d 1192, 1196, *cert. denied Wright v. Indiana,* —— U.S. ——, 113 S.Ct. 605, 121 L.Ed.2d 540 (1992).

Palmer correctly states the prevailing rule in Indiana regarding the admissibility of prior or uncharged misconduct of the accused. The Indiana supreme court adopted Federal Rule of Evidence 404(b) in *Lannan v. State,* 600 N.E.2d 1334. Evid.R. 404(b) provides in pertinent part as follows:

(b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....

We do not find that Palmer was placed in a position of grave peril due to this testimony. In determining the gravity of the peril, we look to "the probable persuasive effect on the jury's decision." *James v. State* (1993), Ind., 613 N.E.2d 15, 22. The trial court judge articulated on the record that based on his observation of the jury as Dr. Hibbert responded, he did not feel that they were shocked and he felt confident that they would follow the court's admonishment and disregard the response. (R. 308). As the trial court judge is in the best position to judge the impact on the jury, we defer to his sound judgment.

Further, a timely and accurate admonishment is presumed to cure any error in the admission of evidence. *Id.* The trial court judge took the proper curative steps by admonishing the jury to disregard Dr. Hibbert's response. We see no error. However, we note that the purpose of a motion in limine is to prevent the display of potentially prejudicial material to the jury until the trial court has the opportunity to rule on its admissibility. *Carter v. State* (1994), Ind.App., 634 N.E.2d 830, 832. Apparently, the State failed to advise Dr. Hibbert of the court's order. We simply reiterate that the court's admonishment was sufficiently curative; however, motions in limine are granted for the purpose of ensuring a defendant a fair determination of his guilt or innocence and it is incumbent upon the parties to alert their witnesses to the court's order.

## II. Rebuttal Witnesses

Palmer contends that the trial court erred when it allowed the State to present rebuttal witnesses. Specifically, Palmer argues that because the witnesses' names were not disclosed prior to trial, they should not have been permitted to testify. We disagree.

The Indiana supreme court recently re-examined its position on disclosure of rebuttal witnesses in *McCullough v. Archbold Ladder Co.* (1993), Ind., 605 N.E.2d 175. The court reviewed the two prevailing lines of cases. One branch stood for the proposition that the State could call an undisclosed rebuttal witness if the need for such witness was not known and anticipated during discovery. The second branch of cases did not require disclosure of rebuttal witnesses under any circumstances. The court concluded that the better rule is "the nondisclosure of a rebuttal witness is excused only when that witness was unknown and unanticipated; known and anticipated witnesses, even if presented in rebuttal, must be identified pursuant to a court order, such as a pre-trial order, or to a proper discovery request." *Id.* at 179. The court said that a "known witness" refers to knowledge of the existence of that witness, and an "anticipated witness" is one which a party anticipates the need for at trial. Our supreme court decided *McCullough* on January 6, 1993, and Palmer was tried in December, 1993. Therefore, the law at the time of Palmer's trial was that the nondisclosure of a rebuttal witness is excused only when that witness is unknown and unanticipated.[3]

The issue before us then is whether the State knew and anticipated that they would call the two rebuttal witnesses. At the conclusion of the State's case-in-chief, the State sought to introduce rebuttal evidence through two State's witnesses: Sheila Carlisle and Debbie Corley. Palmer objected to these witnesses, arguing that the State knew of these witnesses and anticipated calling them yet they were not disclosed on any witness list. The State called these witness-es to rebut the evidence presented through Dr. Richard Lawlor, a defense expert, regarding the "suggestiveness theory."

Dr. Lawlor, a clinical psychologist, testified over the State's objection, regarding his studies on the truthfulness of allegations of child sexual abuse. Specifically, Dr. Lawlor explained that children are vulnerable to memory distortion of alleged molestation and to adopting suggestions from authority figures such as interviewers, counselors or child welfare authorities. Debbie Corley a Child Protective Service case worker testified that she interviewed C.P. in December of 1991. She said that during the interview process, she did not make any suggestions about sexual abuse. The second rebuttal witness called was Sheila Carlisle, a deputy prosecutor in Johnson County. Carlisle interviewed C.P. on three occasions: in January and May of 1992, and in March of 1993. Carlisle testified that she at no time suggested answers to C.P.

The court entered its order on discovery on February 10, 1992, ordering the State to disclose the names and addresses of any "persons the State may call as witnesses." (R. 18). The State filed its first notice of discovery compliance in February, 1992, and supplemental notice of discovery compliance in April, 1993. The State filed its final witness and exhibit list in June, 1993, and Debbie Corley was listed as a potential witness. At this point in time, Sheila Carlisle was the chief deputy prosecutor assigned to the case. The charging information, all motions, the State's first notice of discovery compliance, supplemental notice and final witness and exhibit list were signed by Carlisle. The State appeared by Carlisle at the March 1, 1993, pre-trial conference, when the court ordered the parties to exchange all *final* witness and exhibit lists no later than June 7, 1993. (R. 33). Again on June 8, 1993, the State filed supplemental discovery information, submitted by Carlisle. (R. 50–51).

It is not entirely clear from the record, but it appears that Palmer disclosed Dr. Lawlor

---

3. We note that the *McCullough* decision is not retroactive. *See Jenkins v. State* (1993), Ind., 627 N.E.2d 789, 799, *cert. pending.* The law prior to *McCullough* and the law which prevails in pre-*McCullough* cases is that the State is under no obligation to provide the defense with a list of its rebuttal witnesses. *Id.*

as an additional witness at the November 22, 1993, pre-trial conference. (R. 71). The State's next motion and all subsequent motions were submitted by deputy prosecutor Lisa Nelson or Todd Bowers. The State's final discovery response was also submitted by Nelson. At trial, the State appeared by Nelson and Bowers. Carlisle was not listed in any of the discovery materials as a potential witness.

 The trial court has broad discretion in ruling on violations of discovery orders, and we will reverse only if it has abused that discretion. *Jenkins,* 627 N.E.2d at 799. Exclusion of evidence as a discovery abuse sanction is proper only where there is a showing that the State engaged in deliberate or other reprehensible conduct which prohibits defendant from receiving a fair trial. *Id.*

Debbie Corley was disclosed as a potential witness for the State, and therefore, the trial court was correct to permit her testimony. However, Carlisle was not listed as a potential witness in any of the discovery materials. Further, she was the prosecuting attorney assigned to the case until approximately one month prior to trial. Although *McCullough* was not decided until January of 1993, it was the prevailing law for a portion of the discovery process. It appears from the record that the change of prosecutors one month prior to trial was not merely a fortuitous act by the State. It is possible that after the State had an opportunity to speak to Dr. Lawlor and ascertain the content of his anticipated testimony, it decided to re-assign the case and use Carlisle to rebut Dr. Lawlor's testimony. However, as we are unable to ascertain precisely what happened, we defer to the discretion of the trial court.

There is no evidence in the record, except mere conjecture, that the nondisclosure was an intentional act of bad faith on the part of the State. Further, Palmer should have moved for a continuance. The Indiana supreme court has held that a party's "failure to alternatively request a continuance upon moving to exclude evidence, where a continuance may be an appropriate remedy, constitutes a waiver of any alleged error pertaining to noncompliance with the court's discovery order." *Jenkins,* 627 N.E.2d at 799. In making his ruling, the trial court said:

> [L]et me just indicate that in my civil Final Pre-Trial Order form it indicates that the parties are to disclose even reasonably anticipated rebuttal witnesses. I don't think I have that same wording in my criminal, however, I may change it after this to do that. . . . I do think there's somewhat of a duty to disclose all anticipated witnesses.

(R. 633). In denying the motion to exclude the witnesses, the trial court further said:

> . . . I'm gonna deny [the motion to exclude] at this time, however, I will indicate that I'll probably change my form, my pre-trial order form to indicate that any witness list shall include reasonably anticipated rebuttal witnesses, if then the prosecution can show me that they couldn't reasonably anticipate somebody, and then I may allow it even if it's not listed, however, in this case it was not spelled out, therefore her testimony won't be excluded . . .

(R. 635–36). Regarding the content of the rebuttal evidence, the trial court said:

> . . . I'm not gonna exclude Ms. Carlisle from testifying in this case, and from what I am anticipating about the rebuttal evidence, it appears to me the State is entitled to bring in rebuttal evidence and you had some evidence in regard to hypothetical situations and even before that in regard to factors and criteria that influence suggestibility of children. And I think they're entitled to rebut that . . .

(R. 645). We find no error.

### III. Admissibility of Testimony

Palmer contends that fundamental error occurred due to the admission of inadmissible evidence through several witnesses who testified in the case, both State witnesses and defense witnesses. Specifically, Palmer contends that inadmissible evidence concerning prior acts of misconduct was elicited through five witnesses. He contends that the improper evidence cumulatively deprived him of an opportunity for a fair trial.

 The State contends that Palmer has waived these allegations of error for failure to interpose timely objections at trial.

When a defendant does not properly bring an objection to the trial court's attention so that the court may rule on it at the appropriate time, he is deemed to have waived that possible error. *Butler v. State* (1993), Ind.App., 622 N.E.2d 1035, 1041, *reh'g denied, trans. denied* (citing *Ingram v. State* (1989), Ind., 547 N.E.2d 823, 829). The objection must be made at the time that the error is made in order to preserve the issue for appeal. *Butler*, 622 N.E.2d at 1041.

 Palmer alleges fundamental error in an attempt to circumvent the contemporaneous objection rule. To rise to the level of fundamental error "[it] must constitute a clearly blatant violation of basic and elementary principles, and the harm or potential for harm must be substantial and appear clearly and prospectively." *Ried v. State* (1993), Ind.App., 610 N.E.2d 275, 281, *aff'd Ried v. State* (1993), Ind., 615 N.E.2d 893. To fall within this exception error must be such that if not rectified it would deny the defendant fundamental due process. *Id.*

### A. Testimony of C.P.

Palmer contends that the trial court erred when it permitted C.P. to testify regarding the molestation of Z.P. Palmer failed to object to this testimony at trial. Palmer had filed a pre-trial motion in limine seeking to exclude any prior acts of misconduct; however, the trial court denied that portion of the motion stating that it fell under the res gestae exception.

 It is well-settled that to preserve error in the overruling of a pre-trial motion in limine, the appealing party must object to the admission of the evidence at the time it is offered. *Clausen v. State* (1993), Ind., 622 N.E.2d 925, 927, *reh'g denied*. A motion in limine is not a final ruling on the admissibility of evidence and a ruling on the motion does not preserve error for appeal. *Id.* Having said that a motion in limine does not preserve error and that Palmer failed to interpose a timely objection at trial, this allegation of error has been waived.

Notwithstanding waiver, Palmer's argument is without merit. Indiana has long held evidence of prior uncharged misconduct inadmissible. Our supreme court formally adopted Evid.R. 403(b) in *Lannan*, 600 N.E.2d 1334 (evidence of past crimes is no longer admissible in sex crimes cases in order to prove that the defendant had a depraved sexual instinct; however may be admissible for other purposes). In the case at bar, the trial court denied Palmer's motion in limine regarding the evidence of Palmer's molestation of Z.P. The court ruled that the evidence was admissible under the res gestae branch of the common scheme or plan exception. In explaining this branch of the exception, our supreme court said:

> The res gestae branch of the common scheme or plan exception allows admission of prior uncharged acts that are evidence of a preconceived plan, which included the charged crime. The prior offenses must tend to establish a preconceived plan by which the charged crime was committed. The crimes must, therefore, be so related in character, time, and place of commission as to establish some plan which embraced both the prior and subsequent criminal activity and charged crime.... The [*Lannan* court] held that evidence of uncharged crimes falls within the res gestae exception where each of those crimes was part of an *uninterrupted transaction.*

*Hardin v. State* (1993), Ind., 611 N.E.2d 123, 129–30 (citations omitted; emphasis in original). Therefore, although evidence of prior sexual misconduct is inadmissible to show Palmer acted in conformity with a particular character trait, such evidence may be admissible for other purposes, such as res gestae or evidence which completes the story of the crime.

 We find that the trial court properly admitted the evidence of Palmer's alleged molest of Z.P. The alleged molestation of Z.P. was identical to the molestation of C.P. They occurred contemporaneously, in the same manner and at the exact same location. We find the molest of C.P. and the alleged molest of Z.P. are so closely related that they are part of an "uninterrupted transaction." *Id.* The challenged testimony falls within the res gestae branch of the common scheme or plan exception. We find no error.

### B. Dr. Hibbert

Palmer contends that Dr. Hibbert's testimony violated the court's order in limine and that her opinion testimony constituted an impermissible endorsement of C.P.'s testimony. We have already found that Palmer was not placed in a position of grave peril due to Dr. Hibbert's testimony in violation of the motion in limine. *See infra* Issue I. With regard to Hibbert's opinion testimony, we find no error. On direct examination, Dr. Hibbert testified that her physical examination of C.P. revealed indications consistent with the allegation of sexual abuse. During cross-examination Dr. Hibbert was asked whether she usually testified for the State and Dr. Hibbert responded yes. On re-direct, the State asked Dr. Hibbert why she was not often asked to testify for a defendant. Dr. Hibbert responded:

> Because in fact what I come to present is the objective information based on the medical evaluation, the State gets to present their case so they generally call me first ... if it's our strong opinion that in fact a child has not been molested, the prosecutors don't proceed with the case in most ... I mean I've never had them proceed with one where we've told them that we really felt the child had not been molested.

(R. 324).

Palmer contends that "the witnesses testimony as to her opinion on the molestation constitutes an endorsement or testimony to the effect that the witness believes the victim." Appellant's Brief at 23. We disagree. At no time did Dr. Hibbert give her opinion as to the truthfulness or credibility of C.P. as a witness. In context, Dr. Hibbert's testimony was harmless because she had already given testimony that her medical findings were consistent with the allegations of sexual abuse. In any case, Palmer has waived this error by failing to object at trial. *Butler*, 622 N.E.2d at 1041. A defendant may not state one reason for an objection at trial and then rely on another on appeal. *Ingram*, 547 N.E.2d at 829.

### C. Ellen Palmer

Palmer contends that the trial court erred when it permitted Ellen to testify during cross-examination regarding allegations of sexual abuse by T.P., C.P.'s sister, Palmer's physical and emotional abuse of Ellen, and Palmer's extra-marital affairs during his marriage with Ellen.

Ellen and Palmer were married, divorced and remarried over the course of approximately 20 years. At the time of trial, Ellen was living in Missouri with her three grandchildren and in the process of divorcing Palmer for the second time. Palmer elicited testimony from Ellen during direct examination regarding Palmer's extra-marital affairs, his abusive behavior of she and the children, and allegations of sexual abuse by her granddaughter, T.P. Palmer introduced an exhibit consisting of various poems Ellen had written about Palmer's abusive behavior. Evidence was also adduced through exhibits and testimony that Ellen had gathered literature on child sexual abuse. Ellen testified that she began collecting the literature because T.P. had accused Palmer of sexual abuse.

On cross-examination, Ellen testified that Palmer beat her and her daughter, lied to her and had extra-marital affairs. Ellen further testified that Palmer was in jail for beating her daughter. Ellen read portions of her journal into evidence. These portions accounted specific episodes of abuse. The journal had been marked and referred to during Palmer's direct examination.

Otherwise inadmissible evidence becomes admissible when the defendant himself presents evidence to put the question in issue. *Jones v. State* (1992), Ind.App., 605 N.E.2d 193, 195. Palmer introduced evidence regarding these topics during direct examination. It is apparent from the record that Palmer opened the door during direct examination and thus the trial court properly allowed the State to question her further in these areas.

### D. Character Witnesses

Palmer called Darrell Crossno, David Crossno and Joseph Palmer as charac-

ter witnesses.[4] On cross-examination of these witnesses, the State adduced testimony regarding Palmer's extra-marital affairs, specific acts of physical violence against Ellen and Palmer's propensity to lie. The State further questioned these witnesses as to whether they believed these acts to constitute dishonest and deceptive behavior. Palmer now contends that these specific acts of uncharged prior misconduct are inadmissible. Palmer argues that "these uncharged acts are not evidence which may be utilized for the impeachment of a witness nor may the specific acts be utilized to build or destroy a reputation." Appellant's Brief at 24.

The scope of cross-examination is within the sound discretion of the trial court and we will reverse only upon an abuse of that discretion. *Miles v. State* (1992), Ind. App., 591 N.E.2d 642, 643. Otherwise inadmissible evidence becomes admissible when the defendant himself presents evidence to put the question in issue. *Jones*, 605 N.E.2d at 195.

On direct examination, these witnesses were questioned as to their opinion as to the truth, veracity and honesty of Melvin Palmer. Each of the witnesses testified that they had a high opinion of Palmer with regard to his truthfulness, veracity and honesty. Palmer himself admitted to his history of abusive behavior, extra-marital affairs and specific acts of violence against Ellen and Ellen's daughter.

When Palmer took the stand to testify in his own behalf, his reputation for truthfulness became an issue. Further, Palmer himself opened the door on the subject of his propensity for truthfulness and veracity during direct examination of these witnesses. Therefore, it was proper for the trial court to allow the State to cross-examine these witnesses regarding specific acts of bad character relating to the subject. Palmer had put in issue his character and reputation for truthfulness. Having done so, it was proper for the State to offer evidence of his bad character, including specific acts of miscon-

duct. We find no error, fundamental or otherwise.

## CONCLUSION

Based on the foregoing, we find that the trial court properly denied Palmer's motion for a mistrial and allowed the State to present rebuttal evidence despite deficiencies in the discovery process. We further find that no fundamental error occurred due to the admissibility of character evidence.

The trial court is affirmed in all respects.

ROBERTSON, J., and RATLIFF, Senior Judge, concur.

---

**4.** Darrell and David Crossno are the sons of Ellen Palmer from a previous marriage and Jo-seph Palmer is Ellen and Melvin's son.