Darryn A. SWANSON, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 71A04–9409–CR–356.

Court of Appeals of Indiana.

Sept. 20, 1995.

Transfer Granted Feb. 7, 1996.

Philip R. Skodinski, South Bend, for appellant.

Pamela Carter, Attorney General, Suzann Weber Lupton, Deputy Attorney General, Indianapolis, for appellee.

## OPINION

DARDEN, Judge.

### STATEMENT OF THE CASE

Darryn A. Swanson appeals his conviction by jury of murder. We affirm.

### ISSUES

I. Whether the trial court abused its discretion in admitting evidence that Swanson had slapped a woman and fired two shots in the ceiling before killing the victim.

II. Whether there was sufficient evidence to support Swanson's conviction.

### FACTS

On December 31, 1993, Michelle Cousette and her brother, Rodney Harris, had a party at Cousette's house on Brookfield Street in South Bend. Darryn Swanson was a guest at the party. Several people at the party, including Harris and Swanson, had guns. The guns were fired at midnight to ring in the new year.

At approximately 12:30 a.m., Swanson's girlfriend, Angela Goodloe, arrived at the party. She noticed that Swanson was accompanied by another woman. Swanson and Goodloe began arguing in the kitchen, and Swanson slapped Goodloe. Swanson then followed Goodloe out of the kitchen, and he fired two shots at the ceiling. Harris stood up, waved around his gun, and announced that it was time for everyone to leave because his sister's house was being torn up. Swanson was "put out" of the house. (R. 243). While Swanson's brothers, Sanford and Donald, attempted to calm Harris, Cousette "snatched" the gun from Harris' hand and threw it under an end table. (R. 149–150). Just as Sanford wrestled Harris down on the couch, Swanson kicked in the front door, turned toward Harris, whose back was to the door, and shot him several times in the head.

South Bend Police Department Officer David Woods was dispatched to Cousette's house where he found Harris' body. A brief search of the room revealed a gun laying partially under a table near the couch. Later that morning, Swanson turned himself in at a local police station. Swanson gave a police officer his .38 caliber weapon and stated that he "just shot that guy on Brookfield." (R. 174, 176). Swanson further told police officers that when he entered Cousette's house a second time, he was not sure that Harris even knew that he had returned.

Before trial, the State filed notice of its intent to use Ind. Evidence Rule 404(b) evidence.[1] Swanson objected and filed a motion in limine, and the trial court held a hearing on the matter. The State argued that the evidence that Swanson slapped Angela Goodloe and fired shots in the ceiling to scare her "started the chain of events that led to the shooting of the victim by the defendant. So

---

1. The State's notice of intent to use Evid.R. 404(b) evidence provides in pertinent part as follows:

   1. The general nature of the evidence which the State intends to use is as follows: ...

   B. That the defendant also shot [a 380 semi-automatic] inside the home of Michelle Cousette, located at 1653 N. Brookfield, after getting into an argument with Angela Goodloe, in the presence of several people. (R. 29).

our position is that it's germane to the issues in this case, and part of the *res gestae....*" (R. 104). The trial court denied Swanson's motion. Swanson renewed his objection at trial, and the trial court overruled it. Swanson was convicted of murder and sentenced to forty years.

## DECISION

### I. *Res Gestae*

■ Swanson argues that the trial court erred in permitting "the State to submit evidence that prior to the time the Defendant shot the victim, he had slapped Angela Goodloe and fired shots in the ceiling by her." Swanson's Brief, p. 13. The State argues that the evidence was admissible as part of the *res gestae* of the offense. We agree with the State.

■ A trial court's decision to admit evidence will not be reversed absent a showing of manifest abuse of the trial court's discretion resulting in the denial of a fair trial. *Christian–Hornaday v. State* (1995), Ind.App., 649 N.E.2d 669, 670. Evid.R. Rule 404(b) provides in pertinent part as follows:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

As noted, *res gestae* evidence is not one of the enumerated exceptions to Evid.R. 404(b). However, the list of exceptions is not all-inclusive of the permissible purposes for which evidence is admissible under Evid.R. 404(b). *Hardin v. State* (1993), Ind.App., 611 N.E.2d 123, 129. *Res gestae* evidence is offered to prove and explain the occurrence of a specific charged crime. *Id.* It includes crimes committed as part of an "uninterrupted transaction." *Palmer v. State* (1994), Ind. App., 640 N.E.2d 415, 422 (quoting *Hardin v. State* (1993), Ind., 611 N.E.2d 123, 129–30). *Res gestae* evidence completes the story of the crime. *Palmer*, 640 N.E.2d at 422.

In the *Palmer* case, Palmer argued that the trial court erred when it permitted one of Palmer's grandchildren to testify regarding the molestation of another grandchild. This court held that Palmer had waived this allegation of error because he failed to interpose a timely objection at trial. Waiver notwithstanding, we found that Palmer's argument was meritless because the molestations, which occurred contemporaneously, in the same manner, and in the same location, were part of an "uninterrupted transaction." *Id.*

Here, Swanson argued with Goodloe, slapped her, and fired shots at the ceiling. The gun shots angered Harris, who was concerned about his sister's house. As a result, Harris pulled out his gun and waved it around. Party guests got Swanson out of the house, and they tried to calm Harris. Just as Harris was wrestled to the couch, Swanson kicked in the front door and shot Harris several times in the head. Swanson's shots at the ceiling and Harris' murder were part of an "uninterrupted transaction." We find no error.

### II. *Sufficiency*

Swanson argues that there is insufficient evidence to support his conviction. We disagree.

■ Our standard of review for sufficiency of the evidence is well-settled. We will neither reweigh the evidence nor judge the credibility of witnesses. We examine only the evidence most favorable to the judgment along with all reasonable inferences to be drawn therefrom, and, if there is substantial evidence of probative value to support the conviction, it will not be set aside. *Geans v. State* (1993), Ind.App., 623 N.E.2d 435, 437.

In support of his sufficiency argument, Swanson directs us to the testimony of defense witnesses which, according to Swanson, is "without contradiction that the Defendant had left the scene, prepared to depart, and only re-entered, not to harm the victim, but to locate and make certain defendant's son was not in danger from the reckless behavior of the victim." Swanson's Brief, p. 14. We decline Swanson's invitation to reweigh the evidence and assess the credibility of witnesses.

Swanson further argues that he acted in self defense. In support of this argument, he directs us to a tape recording of his interview with South Bend Police Department Officer Chapman. According to Swanson, "in listening to the complete tape recording you hear of a man who only returned to the house due to his fear for the safety of others, and when confronted with the deceased with a gun, acted without fault in self-defense and in defense of others." Swanson's Brief, p. 15–16. Again, we decline Swanson's invitation to reweigh the evidence.

Affirmed.

CHEZEM and FRIEDLANDER, JJ., concur.