**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Mar 29 2012, 9:17 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**MARCE GONZALEZ, JR.**
Dyer, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANDREW R. FALK**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

JESSE MICHAEL VILLAREAL, JR.,　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　Appellant-Defendant,　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　vs.　　　　　　　　　　　　)　　No. 45A04-1107-CR-337
　　　　　　　　　　　　　　　　　　　)
STATE OF INDIANA,　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　Appellee-Plaintiff.　　　　　　　)

APPEAL FROM THE LAKE SUPERIOR COURT
The Honorable Susan M. Severtson, Judge Pro Tempore
Cause No. 45G02-0807-FC-97

**March 29, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BARTEAU, Senior Judge**

Jesse Michael Villareal, Jr., appeals his convictions of battery, a Class C felony, Ind. Code § 35-42-2-1 (2008), and invasion of privacy, a Class A misdemeanor, Ind. Code § 35-46-1-15.1 (2008). Villareal also appeals his sentence for battery. We affirm.

## ISSUES

Villareal raises two issues, which we restate as:

I.  Whether the trial court abused its discretion by denying his motion for mistrial.

II. Whether his sentence for battery is inappropriate.

## FACTS AND PROCEDURAL HISTORY

In the early morning hours of July 10, 2008, Melinda Milton was sleeping at Villareal's house in Hammond, Indiana. Villareal was not home when Milton went to sleep. In fact, Milton had obtained a protective order against Villareal. Two of Milton's children were also sleeping at the house. Villareal is the father of one of the children. In addition, Milton's cousin, Nicole Silva, was staying at the house that night with several of her children.

When Villareal entered the house early that morning, Silva texted a prearranged message to a friend. The friend contacted the police. Meanwhile, Villareal went to Milton's bedroom and awakened her by dragging her off of the bed by her hair. Villareal called Milton a "whore" and kicked her repeatedly in her face, the back of her head, and her torso. Tr. p. 114. Next, Villareal left Milton's bedroom and returned a short while later. Villareal called Milton a whore again and spat in her face.

2

At that point, Milton and Villareal's child woke in a bassinet in the living room. Milton went to the kitchen to prepare a bottle, and Villareal followed her. Villareal picked up a chair and hit Milton in the back, causing the chair to break. Next, Villareal picked up a knife and threatened to kill Milton. Milton, believing that Villareal would carry out his threat, crawled under the kitchen table.

Next, Officer Shane Hric arrived at the house. As he approached, Hric heard shouting and crying through the house's open windows. Officer Gabriel Malave arrived next, and Villareal noticed the officers' presence. Milton came to a window and pleaded for help. Hric saw that Milton's face was covered in blood, she had swelling around her mouth and nose, and she had "a large, probably golf ball size lump above her left eye." *Id.* at 176. Villareal also came to the window, and the officers drew their guns. Villareal shouted at the officers, telling them to shoot him. Milton again asked the officers for help, and Villareal said, "Bitch, I'll kill you." *Id.* at 177. The officers attempted to enter, but the front door was blocked shut by a couch. The officers persuaded Villareal to move the couch, and they entered the home and took him into custody. Hric saw blood on the kitchen floor and on a refrigerator. He also saw a broken chair in the kitchen.

Milton was taken to a hospital for treatment. At the hospital, staff noted that Milton had abrasions and contusions on her head, face, abdomen, back, right leg, and left arm. Milton complained of severe pain. She told hospital personnel that her boyfriend attacked her and that "he should be in jail." Tr. Vol. 5, Ex. 49A. In a report, a hospital employee noted that Milton expressed a fear that "if he bonds out[,] he will kill her." *Id.*

The State charged Villareal with two counts of battery, both Class C felonies, Ind. Code § 35-42-2-1, for attacking Milton; domestic battery, a Class D felony, Ind. Code § 35-42-2-1.3 (2006), for attacking Milton where a child less than sixteen years of age was present and might be able to hear or see the offense; invasion of privacy, a Class A misdemeanor, Ind. Code § 35-46-1-15.1, for violating Milton's protective order; and other charges not at issue here.

Villareal's case was tried to a jury. Before the presentation of evidence began, Villareal moved in limine to keep the State from submitting evidence of Villareal's prior or subsequent bad acts. The trial court granted the motion. During the trial, the following discussion occurred during Hric's testimony:

> STATE: Did Melinda Milton provide you with any other information?
>
> HRIC: She continued to say that he had entered the house through a broken front door, which occurred at a previous incident to her knowledge.

Tr. p. 193. Villareal moved for a mistrial, contending that Hric had violated the order in limine. The trial court denied the motion, concluding that the testimony did not violate the order.

The jury found Villareal guilty of the first count of battery as a Class A misdemeanor, guilty of the second count of battery as a Class C felony, guilty of domestic battery, and guilty of invasion of privacy. The court declined to enter a judgment of conviction on the Class A misdemeanor battery and domestic battery verdicts, citing double jeopardy concerns. Instead, the court entered a judgment of conviction on the guilty verdicts for Class C felony battery and invasion of privacy. The

4

court sentenced Villareal to an aggregate term of six years, with two years suspended to probation. This appeal followed.

## DISCUSSION AND DECISION

## I. MOTION FOR MISTRIAL

Villareal contends that Hric's testimony that Milton had told him that the front door had been broken during "a previous incident" was an impermissible reference to other crimes, wrongs, or acts by Villareal in violation of Indiana Evidence Rule 404(b). Tr. p. 193. Consequently, he concludes that the trial court should have granted his request for a mistrial.

We review the trial court's decision to deny a mistrial for an abuse of discretion because the trial court is in the best position to gauge the surrounding circumstances of an event and its impact on the jury. *Pittman v. State*, 885 N.E.2d 1246, 1255 (Ind. 2008). A mistrial is appropriate only when the questioned conduct is so prejudicial and inflammatory that the defendant was placed in a position of grave peril to which he or she should not have been subjected. *Id.* The gravity of the peril is measured by the conduct's probable persuasive effect on the jury. *Id.* The defendant bears the burden on appeal to show that he or she was placed in grave peril by denial of the motion for mistrial. *Myers v. State*, 887 N.E.2d 170, 189 (Ind. Ct. App. 2008), *trans. denied*.

Here, Hric did not describe the previous incident that resulted in damage to the front door. In addition, he did not accuse Villareal of breaking the door or suggest that Villareal was in any way involved in the previous incident. Hric's passing reference to the front door already being broken at the time of the crimes at issue must be weighed

against the substantial evidence establishing Villareal's guilt. Milton's statement to the police, which described Villareal's attack upon her as set forth above, was read into evidence.[1] In addition, the jury was provided with photographs showing Milton's injuries on the morning of the attack. Hric and Malave described Villareal's and Milton's appearances and actions. Furthermore, the jury was provided with Milton's medical records. The records indicate that Milton told hospital staff that her boyfriend had assaulted her. In light of this substantial evidence, Hric's general reference to a prior incident would not have had a probable persuasive effect on the jury's decision.

Villareal cites to *Underwood v. State*, 644 N.E.2d 108 (Ind. 1994), and *Palmer v. State*, 640 N.E.2d 415 (Ind. Ct. App. 1994), but those cases do not support his argument. To the contrary, in both cases the appellate court determined that the trial court did not err by denying the defendants' motions for mistrial. In this case, Villareal has not demonstrated that he was placed in grave peril, and the trial court did not abuse its discretion by denying the motion for mistrial.

## II. APPROPRIATENESS OF SENTENCE

Villareal contends that he should have received the advisory sentence for his battery conviction and asks this Court to reduce his sentence. His claim is governed by Indiana Appellate Rule 7(B), which provides, in relevant part, "The Court may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the

---

[1] At trial, Milton stated that she was unable to remember who had attacked her because she was intoxicated on the morning in question. Consequently, the State produced a written, signed statement Milton had given to the police on July 10, 2008, and read the statement into the record.

character of the offender." In making this determination, we may look to any factors appearing in the record. *Calvert v. State*, 930 N.E.2d 633, 643 (Ind. Ct. App. 2010). A defendant must persuade the appellate court that the sentence meets the inappropriateness standard of review. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

We first look to the statutory range established for the class of the offense. The statutory range for a Class C felony is between two and eight years, with the advisory sentence being four years. Ind. Code § 35-50-2-6 (2005). Villareal received a sentence of five years for his battery conviction, to be served consecutively with a one-year sentence for his conviction of invasion of privacy, for a total of six years, with two years suspended to probation.

We next look to the nature of the offense and the character of the offender. The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation. *See Treadway v. State*, 924 N.E.2d 621, 642 (Ind. 2010) (noting that the defendant's crimes were "horrific and brutal"). The character of the offender is found in what we learn of the offender's life and conduct. *See Lindsey v. State*, 916 N.E.2d 230, 241-42 (Ind. Ct. App. 2009) (reviewing the defendant's criminal history, probation violations, and history of misconduct while incarcerated), *trans. denied*.

Our review here of the nature of the offense shows that Villareal brutally ambushed Milton as she slept. He pulled her off of her bed by her hair and kicked her repeatedly in the head and torso. Villareal also spat in her face several times. Next, as Milton was preparing a bottle for their child, Villareal struck her with a chair with

sufficient force to break the chair. Furthermore, he threatened Milton with a knife and said that he would kill her, placing her in fear for her life. When the police arrived, Milton's face was covered in blood, she had obvious facial injuries, and she repeatedly pleaded for help. Milton experienced severe pain from Villareal's assault, and her injuries required medical treatment. It speaks poorly of Villareal that he had several chances to end his attacks on Milton but chose not to do so until the police arrived. Villareal's extended, terrifying assault demonstrates a complete lack of regard for others.

Our review here of the character of the offender shows that Villareal, who was twenty-one years of age at sentencing, has a limited criminal history. He has two juvenile adjudications, one for auto theft, fleeing law enforcement, and consumption of alcohol, and the second for burglary. He has accrued no adult convictions. Nevertheless, Villareal was placed on probation in one of his juvenile cases, and he violated the terms of his probation. In addition, he had been released on bond in another case at the time of his arrest in the current case. Finally, at the time of sentencing in this case, Villareal had two protective orders filed against him. Villareal's failure to comply with probation requirements and to avoid further legal entanglements while out on bond demonstrates that an enhanced sentence is not inappropriate.

Villareal asserts that the trial court improperly considered his arrest record in the course of sentencing him and that this Court should disregard those arrests. We disagree. When we evaluate the character of an offender, it is proper to consider past arrests even if some of them did not result in convictions. *See Boggs v. State*, 928 N.E.2d 855, 870-71 (Ind. Ct. App. 2010) (noting that a record of arrests may reveal that a defendant has not

been deterred even after having been subject to the police authority of the State on multiple occasions), *trans. denied*. In any event, Villareal's failure to respond positively to probation, commission of the current crimes while out on bond, and pending protective orders at the time of the crimes at issue provide sufficient evidence of his refusal to comply with the law.

Given the nature of Villareal's offenses and his character, he has failed to persuade us that his enhanced sentence for battery is inappropriate.

CONCLUSION

For the reasons stated above, we affirm the judgment of the trial court.

Affirmed.

MAY, J., and BRADFORD, J., concur.

9