**Quinn LEHMAN, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee–Plaintiff.**

**No. 50A04–0206–CR–271.**

Court of Appeals of Indiana.

Oct. 24, 2002.

June K. Bules, Plymouth, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

After a jury trial, Quinn Lehman was convicted of two counts of child molesting[1] as Class C felonies. He now appeals, raising the following issue for review: whether the trial court erred in denying his motion for a mistrial after the State's witness, the investigating officer, violated the motion in limine by referring to the investigation of other child molesting complaints against Lehman in his answer to a question on cross-examination.

We reverse and remand.

### FACTS AND PROCEDURAL HISTORY

Lehman and Barbara Bradshaw became involved in a relationship and began living together with Bradshaw's three children, including six-year-old A.B. At some point, A.B. told her mother that Lehman molested her. Bradshaw confronted Lehman, but Lehman denied the allegation. Later, Lehman and Bradshaw ended their relationship, and both parties moved. Bradshaw's children were placed in foster care. A.B. repeated her allegations to her foster mother, who contacted law enforcement.

Lehman was charged with two counts of child molesting as Class A felonies. This charge was later amended to add two counts of child molesting as Class C felonies.

At the trial, the trial court granted Lehman's motion in limine to prohibit the introduction into evidence of other alleged "acts related or unrelated to this cause, including but not limited to any prosecutions in St. Joseph County for sexual offense cases ..." *Appellant's Appendix* at 17.

During the direct examination of one of the State's witnesses, the investigating officer, Ryan Harmon, the trial court advised Harmon of the motion in limine. During his cross-examination, Lehman's counsel asked Harmon if he did any other type of investigation in this case. After Harmon responded affirmatively, Lehman's counsel asked, "What else did you do?" *Transcript* at 116. Harmon stated, "This investigation broadened into a numerous other nine (9) other victims." *Id.* Lehman's counsel moved for a mistrial. The trial court denied the motion for mistrial, struck Harmon's answer, and instructed the jury to disregard it.

Lehman was convicted of two counts of child molesting as Class C felonies and was acquitted of the other two charges. He now appeals.

### DISCUSSION AND DECISION

Lehman contends that the trial court erred in denying his motion for a mistrial after Harmon violated the motion in limine by referring to his investigation of child molesting allegations against Lehman involving nine other victims.

The purpose of a motion in limine is to prevent the display of potentially prejudicial material to the jury until the trial court has the opportunity to rule on its admissibility. *Herrera v. State*, 710 N.E.2d 931, 935 (Ind.Ct.App.1999); *Palmer v. State*, 640 N.E.2d 415, 419 (Ind.Ct.

---

1. *See* IC 35–42–4–3(b).

App.1994), *superceded by statute on other grounds*. Motions in limine are granted for the purpose of ensuring a defendant a fair determination of his guilt or innocence, and it is incumbent upon the parties to alert their witnesses to the court's order. *Palmer*, 640 N.E.2d at 419.

 Whether to grant or deny a motion for mistrial is a decision left to the sound discretion of the trial court. *Price v. State*, 656 N.E.2d 860, 863 (Ind.Ct.App. 1995), *trans. denied* (1996). We will reverse the trial court's ruling only upon an abuse of that discretion. *Id.* We afford the trial court this deference on appeal because the trial court is in the best position to evaluate the relevant circumstances of an event and its impact on the jury. *Kavanaugh v. State*, 695 N.E.2d 629, 632 (Ind.Ct.App.1998); *Clark v. State*, 695 N.E.2d 999, 1004 (Ind.Ct.App.1998), *trans. denied; Palmer*, 640 N.E.2d at 419. To prevail on appeal from the denial of a motion for mistrial, the appellant must demonstrate the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. *Kavanaugh*, 695 N.E.2d at 632; *Clark*, 695 N.E.2d at 1004; *Palmer*, 640 N.E.2d at 419. We determine the gravity of the peril based upon the probable persuasive effect of the misconduct on the jury's decision rather than upon the degree of impropriety of the conduct. *Kavanaugh*, 695 N.E.2d at 632; *Clark*, 695 N.E.2d at 1004.

 A mistrial is an extreme sanction warranted only when no other cure can be expected to rectify the situation. *Kavanaugh*, 695 N.E.2d at 632; *Clark*, 695 N.E.2d at 1004; *Price*, 656 N.E.2d at 863. Reversible error is seldom found when the trial court has admonished the jury to disregard a statement made during the proceedings, *Kavanaugh*, 695 N.E.2d at 632, because a timely and accurate admonition to the jury is presumed to sufficiently protect a defendant's rights and remove any error created by the objectionable statement. *Link v. State*, 648 N.E.2d 709, 711 (Ind.Ct.App.1995); *Palmer*, 640 N.E.2d at 419.

In *Palmer*, 640 N.E.2d at 418–19, a defendant argued that the trial court erred in denying his motion for a mistrial after a state's witness violated a motion in limine during her cross-examination. In that case, the defendant was on trial for a specific act of child molesting committed against his victim. The trial court granted the defendant's motion in limine to exclude evidence of other acts of child molesting committed against the victim and his siblings. At trial, a pediatrician specializing in the area of child sexual abuse testified that her physical examination of the victim revealed indications consistent with the allegation of sexual abuse. During cross-examination, defense counsel asked the witness approximately when this incident of molest took place. She testified "[t]he allegations as we understood them,—was that they had been occurring for approximately two years." *Id.* at 419. The trial court found that the order in limine had been violated, but that it did not merit a mistrial. The trial court denied the motion for mistrial, struck the witness's response, and admonished the jury to disregard it.

In evaluating the defendant's claim that he was entitled to a reversal on this basis, we noted the trial court's wide discretion to grant a mistrial. We looked to Ind. Evidence Rule 404(b), which generally prohibits the admission into evidence of other crimes, wrongs, or acts to prove the character of a person in order to show action in conformity therewith. In determining the gravity of the peril, we examined the probable persuasive effect of the witness's testimony on the jury's decision. We noted

that the trial court articulated on the record that based on its observation of the jury as the witness responded, it did not feel that the jury was shocked and felt confident that it would follow the court's admonishment and disregard the response. We deferred to the trial court's judgment because it was in the best position to judge the impact on the jury. Finally, we observed that the trial court admonished the jury to disregard the response. Ultimately, we concluded that the defendant was not placed in a position of grave peril due to this testimony, and he was not entitled to reversal of his conviction. *Id.*

■ Here, Harmon was specifically advised as to the motion in limine. During his direct examination, the trial court asked Harmon to approach the bench, where it advised him about the motion in limine prohibiting any reference to polygraphs and prior incidences of molestation involving Lehman. *Transcript* at 108. In spite of this advisement, in referring to his investigation of Lehman, Harmon specified "nine other victims." The trial court made no observations regarding the effect this comment may have had on the jury, and the record does not disclose any consideration of this factor. Thus, we cannot defer to the trial court's determination of this issue. We hold that Harmon's testimony in violation of the motion in limine placed Lehman in a position of grave peril to which he should not have been subjected. Harmon's reference to "nine other victims" was so prejudicial and inflammatory that the effect on the jury of learning that Lehman was being investigated for molesting nine other "victims" was very likely to have been significant. In so holding, we are mindful of the trial court's admonishment to the jury to disregard Harmon's response. However, under these circumstances, we are not persuaded that the admonishment cured the defect. The trial court erred in denying Lehman's motion for mistrial.

■ A defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction may be retried so long as there was sufficient evidence to support the conviction. *Perkins v. State*, 542 N.E.2d 549, 551 (Ind.1989); *Berry v. State*, 725 N.E.2d 939, 944 (Ind.Ct.App.2000). Therefore, we must determine whether sufficient evidence supported Lehman's convictions. To obtain a conviction for child molesting as a Class C felony, the State was required to prove that Lehman, with A.B., a child under fourteen (14) years of age, performed or submitted to the fondling or touching of either himself or A.B., with the intent to arouse or to satisfy the sexual desires of either of them. IC 35–42–4–3(b).

■ At trial, A.B. testified that she was nine years old and in the third grade. She stated that when she was in first grade, Lehman came into her room at night, took off his clothes, got on her bed, pushed her blankets off to the side, pulled up her nightgown, got on top of her, and touched his "private part" to hers. *Transcript* at 20. She further testified that on a different occasion, she was in her mother's bed. Lehman removed his pants and hers, and she felt his "private parts" on her "butt." *Transcript* at 23. This evidence was sufficient to sustain the jury's verdicts. Therefore, Lehman may be retried upon remand.

Reversed and remanded.

DARDEN, J., concurs.

BROOK, C.J., concurs with separate opinion.

BROOK, Chief Judge, concurring.

I fully concur in the majority's reasoning and result, but I write separately to offer

some simple suggestions for averting future occasions for mistrial in similar situations.

During direct examination by the State, the trial court advised Officer Harmon of the order in limine regarding evidence of other "related or unrelated" acts allegedly committed by Lehman. In light of this advisement, one could readily characterize Harmon as an overzealous witness for the prosecution and lay the responsibility for the reversal of Lehman's convictions on his doorstep. Given the open-ended question posed by Lehman's counsel, however, one could just as easily point the finger of blame in another direction.

A cardinal rule of effective trial advocacy is never to ask a question to which one does not know the answer. Indiana Evidence Rule 611 permits the use of leading questions on cross-examination, and a well-prepared advocate will skillfully employ this technique to control adverse witnesses and thereby shape their testimony to her client's advantage. By asking Harmon "[w]hat else did [he] do" in conducting further investigation into Lehman's case, defense counsel lost control of the witness and consequently invited an unanticipated and ultimately devastating answer. Regardless of whether Harmon responded with malice aforethought, the fact remains that the question never should have been asked. By meticulously plotting a course for a witness's testimony on cross-examination and by using carefully chosen leading questions to follow this course, an effective advocate will avoid the possibility of a witness violating an order in limine and thereby avoid the possibility of mistrial.

On a related note, an effective advocate should not only advise witnesses of the existence of an order in limine, but also advise them of the importance of seeking trial court guidance before giving a response on cross-examination that might violate the order. Better yet, a trial court should initiate a conference outside the hearing of the jury to avoid any possibility of a witness violating an order in limine. In any event, if a witness deliberately gives a response that violates an order, then the trial court may exercise its discretion to hold the witness in direct contempt. *See Johnson v. State*, 426 N.E.2d 104, 105–06 (Ind.Ct.App.1981) (noting that if defense counsel did violate order in limine regarding " 'checkered career' " of State's witness, such conduct could constitute direct contempt of court). Obviously, such a punishment would be the last resort in responding to a dilemma that easily could be avoided by the skill, good faith, and vigilance of all concerned.