**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Jan 21 2014, 10:16 am

Kevin S. Smith

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**FREDERICK VAIANA**
Voyles Zahn & Paul
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MONIKA PREKOPA TALBOT**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| CHRISTOPHER JETHROE, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A05-1304-CR-155 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Steven R. Eichholtz, Judge
Cause No. 49G20-1105-FA-33644

**January 21, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**KIRSCH, Judge**

Christopher Jethroe ("Jethroe") was convicted following a jury trial of two counts of dealing in cocaine,[1] each as a Class A felony, dealing in a controlled substance within one thousand feet of school property,[2] a Class A felony, and dealing in marijuana within one thousand feet of school property,[3] a Class C felony. The trial court sentenced Jethroe to thirty-two years for each of the Class A felonies, twenty years of which were executed, and nine years for the Class C felony, two years of which were executed. The sentences were ordered to be served concurrently, for a total executed sentence of twenty years. Jethroe appeals his convictions and sentence raising the following restated issues:

I.      Whether the trial court erred in denying Jethroe's motion for a mistrial;

II.     Whether there was sufficient evidence to sustain Jethroe's conviction for dealing in a controlled substance as a Class A felony; and

III.    Whether this case should be remanded to correct the nine-year sentence imposed for Jethroe's dealing in marijuana conviction because it exceeds the maximum penalty allowed for a Class C felony.

We affirm in part, reverse in part, and remand with instructions.

**FACTS AND PROCEDURAL HISTORY**

In early May 2011, a confidential informant ("the CI") advised Indianapolis Metropolitan Police Department Detective Brad Nuetzman ("Detective Nuetzman") that a certain individual known as "Big" or "Big Guy" was illegally selling various quantities of

---

[1] *See* Ind. Code § 35-48-4-1.

[2] *See* Ind. Code § 35-48-4-2.

[3] *See* Ind. Code § 35-48-4-10.

controlled substances at 972 Edgemont Avenue in Indianapolis, Indiana ("the Edgemont address"). Detective Nuetzman set up two controlled buys and, on May 9 and May 10, 2011, the CI and an undercover detective bought illegal drugs from "Big Guy" at the Edgemont address.

After the second transaction, Detective Nuetzman displayed a photo array to the CI and the undercover detective, who each identified Jethroe as the one who had illegally sold them drugs during the controlled buys. Detective Nuetzman secured a search warrant, which he executed at the Edgemont address on May 12, 2011. During that search, the police arrested Jethroe and charged him with nine counts.[4] Jethroe sought to suppress evidence obtained during the search, but was unsuccessful.

A two-day jury trial was held on February 20 and 21, 2013. During the trial, the State introduced[5] the results of laboratory tests, revealing that three of the tablets sold by Jethroe to the CI were N-Benylpiperazine. *State's Ex.* 9 at 21.

The jury found Jethroe guilty of two counts of dealing in cocaine (Counts I and V), each as a Class A felony; two counts of possession of cocaine (Counts II and VI), each as a Class A felony; one count of dealing in a controlled substance (Count III) as a Class A felony; one count of possession of a controlled substance (Count IV) as a Class C felony; one count of dealing in marijuana (Count VII) as a Class C felony; and one count of

---

[4] Jethroe was charged with nine counts; however, at the conclusion of the State's case-in-chief, the trial court removed from the jury's consideration Count IX of the charging information, i.e., possession of marijuana, a Class A misdemeanor. The State also filed a habitual offender enhancement at a later date; however, prior to sentencing, the State agreed to dismiss the habitual sentence enhancement.

[5] This information was introduced when the State published Exhibit 9 by reading it to the jury. Both parties stipulated to the laboratory results contained in Exhibit 9. *State's Ex.* 9 at 21.

possession of marijuana (Count VIII) as a Class A misdemeanor. Each count, with the exception of Count VIII, was alleged to have been committed within one thousand feet of school property. After the jury returned its guilty verdicts, defense counsel polled each juror to ask, "[A]re those your verdicts," to which each juror answered, "Yes." *Tr.* at 263-65. During that process, however, Juror Two indicated that he had a question. *Id.* at 263-64. The trial court asked Juror Two to approach the bench, and a very short exchange took place. *Id.* at 263-64. In the transcript, Juror Two's question was noted as "unintelligible," after which the trial judge stated, "[I]f that's your verdict, you have to tell me yes or no. Okay." *Id.* at 264. The trial court then asked Juror Two if those were his verdicts, and the juror said, "Yes, sir." *Id.* After the trial judge ordered the jury to again retire to the deliberation room, defense counsel voiced his concern "about what happened with" Juror Two. *Id.* at 266. The trial judge explained that "it was kind of hard to understand" his question, so I asked Juror Two again if that was his verdict. *Id.*

Jethroe asked the trial court to set aside the verdict, arguing that Juror Two expressed doubt, and therefore, it was an "improper jury verdict." *Id.* The State responded, "Judge, you asked specifically if that was the verdict and [Juror Two] answered yes. . . . I don't think there is any grounds [sic] to set aside the jury verdict." *Id.* at 267. The trial court denied the motion to set aside. Later, outside the presence of the jury, the parties listened to the recording of the conference between the trial judge and Juror Two, but found

it "inaudible."[6] Jethroe then sought a mistrial based upon this conversation, but that motion was denied by the trial court. *Id*. at 272-73.

The trial court sentenced Jethroe on four counts, finding that Counts II, IV, VI, and VIII (pertaining to dealing) merged with Counts I, III, V, and VII (pertaining to possession). Jethroe was sentenced to thirty-two years for each of the Class A felonies (Counts I, III, and V), with twenty years executed and twelve years suspended, and nine years for the Class C felony (Count VII), with two years executed and seven years suspended. The sentences were ordered to be served concurrently, for a total executed sentence of twenty years. Additional facts will be added where needed.

## DISCUSSION AND DECISION

### I.  Motion for Mistrial

Jethroe contends that the trial court erred when it denied his motion for a mistrial after the trial judge spoke with Juror Two. Specifically, he contends that he was denied his constitutional right to a trial by jury because the trial court's "*ex parte*"[7] communication with Juror Two impinged on Jethroe's right to a unanimous jury verdict. *Appellant's App*. at 7.

Whether to grant or deny a motion for mistrial is a decision left to the sound discretion of the trial court. *Alvies v. State*, 795 N.E.2d 493, 506 (Ind. Ct. App. 2003)

---

[6] From the use of the word inaudible, it is not clear whether the parties could not hear what was said on the recording because of technical problems or because Juror Two did not speak clearly.

[7] The term "*ex parte*" means "on or from one side only." *In re Anonymous*, 729 N.E.2d 566, 568 n.2 (Ind. 2000) (citing Black's Law Dictionary 517 (5th ed. 1979)). A communication is *ex parte* if made by a party outside the record without giving other parties notice or an opportunity to contest. *Id*. at 567-68.

(citing *Lehman v. State,* 777 N.E.2d 69, 72 (Ind. Ct. App. 2002)), *trans. denied.* "We will reverse the trial court's ruling only upon an abuse of that discretion." *Id.* "We afford the trial court such deference on appeal because the trial court is in the best position to evaluate the relevant circumstances of an event and its impact on the jury." *Id.* "To prevail on appeal from the denial of a motion for mistrial, the appellant must demonstrate the statement or conduct in question was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected." *Id.* "We determine the gravity of the peril based upon the probable persuasive effect of the misconduct on the jury's decision rather than upon the degree of impropriety of the conduct." *Id.*

At trial, Jethroe moved for a mistrial on the basis that Juror two had "dissent[ed] from the verdict." *Tr.* at 272. The trial court disagreed with Jethroe's characterization that Juror Two dissented, and it denied his motion for mistrial. *Id.* at 272. Based on the following, we find that the trial court did not abuse its discretion. Here, the jury deliberated and returned a unanimous verdict of guilty on all eight counts. *Id.* at 262. Jethroe requested that the jury be polled. In the presence of Jethroe, his attorney, and the prosecutor, the trial judge asked each juror whether the verdict was his or her verdict. When asked, Juror Two stated that he had a question. At the trial judge's request, and without objection by either party, Juror Two approached the bench. A short, but inaudible, exchange occurred in open court between the trial judge and Juror Two, after which the trial judge stated, "[I]f that's your verdict, you have to tell me yes or no. Okay. All Right [Juror Two], are those your verdicts? Out loud please." *Id.* at 264. Juror Two answered "Yes sir." *Id.* The remaining jurors individually agreed that the verdict read in open court was their verdict.

6

The jury reached a unanimous verdict and when polled with the question, "are those your verdicts," each juror answered yes. We find that Jethroe has failed to demonstrate that the contact between the trial judge and Juror Two was so prejudicial and inflammatory that he was placed in a position of grave peril to which he should not have been subjected. Therefore, the trial court did not abuse its discretion in denying Jethroe's motion for a mistrial.

## II. Sufficiency of the Evidence

Jethroe next contends that there was insufficient evidence to convict him of dealing in a controlled substance as a Class A felony because the State failed to prove that the alleged substance, benzylpiperazine, was in fact a controlled substance. Jethroe merely argues, "None of the State's parade of witnesses, multiple lab reports, or stipulations of evidence, offered any proof this substance was controlled, let alone under Schedule I." *Appellant's Br.* at 12.

> Our standard of review with regard to sufficiency claims is well settled. In reviewing a sufficiency of the evidence claim, we neither reweigh the evidence nor judge the credibility of the witnesses. We will consider only the evidence most favorable to the judgment and the reasonable inferences drawn therefrom and will affirm if the evidence and those inferences constitute substantial evidence of probative value to support the judgment. A conviction may be based upon circumstantial evidence alone. Reversal is appropriate only when reasonable persons would not be able to form inferences as to each material element of the offense.

*Naas v. State*, 993 N.E.2d 1151, 1152 (Ind. Ct. App. 2013).

"It is a well-settled principle of criminal law that a conviction will be reversed as a matter of law if the State fails to prove an essential element of the crime." *Porod v. State*, 878 N.E.2d 415, 417 (Ind. Ct. App. 2007) (citing *Barnett v. State*, 579 N.E.2d 84, 86 (Ind.

Ct. App. 1991), *trans. denied*). "By example, with respect to offenses involving controlled substances, the State must prove, as an essential element, the proscribed drug falls within the applicable statutory provision." *Id*. "If a drug is identified in court by a name specifically designated as a controlled substance by the Indiana Code, then the State has proven as a matter of law the drug is a controlled substance." *Id*.

Count III of the information alleged that Jethroe "did knowingly deliver to an undercover police officer a controlled substance, that is: benzylpiperazine,[8] classified in Schedule I of the Indiana Uniform Controlled Substances Act, and said delivery took place within one thousand (1000) feet of a school." *Appellant's App*. at 43. The State's evidence showed that Jethroe sold Officer McCoy pills on May 9, 2011. *Tr*. at 62-63. Laboratory testing revealed, and Jethroe stipulated to the fact, that three of the pills he sold to Officer McCoy contained N-benzylpiperazine or BZP. *State's Ex*. 9. The Indiana Code defines N-benzylpiperazine or BZP as a Schedule I controlled substance. Ind. Code § 35-48-2-4(a), (f). Final Instruction Number 6 informed the jury that benzylpiperazine is a controlled substance. *Appellant's App*. at 132. We conclude that the evidence was sufficient to establish that Jethroe committed dealing in benzylpiperazine, a Schedule I controlled substance. Because Jethroe does not contest the proof of the element that he was dealing within one thousand feet of school property, we find substantial evidence of probative

---

[8] Among other things, this drug is also called: Benzylpiperazine; N-benzylpiperazine; and 1-benzylpiperazine. *See* http://www.chemicalbook.com/ChemicalProductProperty_EN_CB8365859.htm (last visited Dec. 10, 2013).

value to support Jethroe's conviction of Class A felony dealing in a controlled substance within one thousand feet of school property.

### III.    Sentencing

Jethroe was convicted of Class C felony dealing in marijuana under Indiana Code section 35-48-4-10 and was sentenced to nine years. The maximum sentence for a Class C felony is 8 years. Ind. Code § 35-50-2-6. Jethroe contends, and the State agrees, that a nine-year sentence for a Class C felony conviction is not authorized by statute. Therefore, as to Jethroe's conviction for dealing in marijuana, we remand with instructions to the trial court to revise the sentence on that offense downward to a term of imprisonment within the range authorized by the Class C felony sentencing statute. *See id.* (sentencing range for Class C felony is between two and eight years).

Affirmed in part, reversed in part, and remanded with instructions.

FRIEDLANDER, J., and BAILEY, J., concur.