## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Aug 27 2018, 10:10 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Zachary J. Stock
Zachary J. Stock, Attorney at Law, P.C.
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

John Kochowiec,

*Appellant-Defendant,*

v.

State of Indiana,

*Appellee-Plaintiff.*

August 27, 2018

Court of Appeals Case No.
32A01-1712-CR-2910

Appeal from the Hendricks
Superior Court

The Honorable Rhett Stuard,
Judge

Trial Court Cause No.
32D02-1703-CM-440

**Robb, Judge.**

# Case Summary and Issue

[1] Following a jury trial, John Kochowiec was convicted of battery causing bodily injury, a Class A misdemeanor. At trial, the victim testified Kochowiec was "a felon" in violation of an order in limine. Kochowiec now appeals, raising the sole issue of whether the trial court abused its discretion by denying his motion for a mistrial. Concluding the trial court did not abuse its discretion, we affirm.

# Facts and Procedural History

[2] Kochowiec and Robert Couch have a long-running antagonistic relationship—often requiring police involvement. Couch is married to Angela Couch, the mother of Kochowiec's two children. On December 28, 2016, Kochowiec met Couch, who was joined by Angela, at a Speedway gas station for a custody exchange. After the children entered Kochowiec's vehicle, Kochowiec "flipped off" Couch as he pulled away. Transcript, Volume II at 124. Couch exited his vehicle and returned the gesture. Couch followed Kochowiec's vehicle on foot and began videotaping with his cellphone. After Kochowiec stopped at a red light, Couch crossed the street and approached Kochowiec's vehicle "to try to [videotape] his license plate because he had just got a new car." *Id.* at 125.

[3] Kochowiec eventually exited his vehicle and confronted Couch on the street. After a brief period of yelling, Kochowiec grabbed Couch's phone and threw it to the ground. Then, as Couch attempted to retrieve his phone, Kochowiec punched him in the side of the face. Couch fell to the ground before

immediately standing back up, yelling to onlookers, "you saw what he did, you saw what he did[!]" *Id.* at 104. The two continued yelling back and forth and Kochowiec returned to his vehicle, briefly drove away, and then returned to the parking lot of a gas station across the street.

[4] The State charged Kochowiec with battery resulting in bodily injury, a Class A misdemeanor. After Kochowiec demanded a jury trial, the case was transferred from Plainfield Town Court to Hendricks Superior Court. Kochowiec filed a pleading advising the State of his intent to claim self-defense as well as a motion in limine seeking to exclude any reference to his criminal history. Without objection, the trial court granted Kochowiec's motion in limine.

[5] At trial, Couch testified regarding the December 28, 2016, incident, and the State introduced photographs of Couch's injuries. During defense counsel's cross-examination of Couch regarding prior legal actions between the parties, the following exchange occurred:

> [Counsel]: Okay. How many times have the police been involved between you two?
>
> [Couch]: Lots.
>
> [Counsel]: Okay, did you threaten him and tell him that you carry a gun?
>
> [Couch]: No.
>
> [Counsel]: Did you ever tell him you'll use a gun?

[Couch]:            No.

[Counsel]:          Do you have a license to carry a gun?

[Couch]:            Yes, ma'am, I do.

[Counsel]:          And do you have a gun?

[Couch]:            On me now?

[Counsel]:          In general, not right now.

[Couch]:            Yes, I have a gun.

[Counsel]:          Okay.  Do you carry it?

[Couch]:            Yes, I do, where it's legal.

[Counsel]:          Okay.  Did you carry it that night?

[Couch]:            I never carry my gun when I'm with the kids, dropping them off or picking them up.

[Counsel]:          Okay.  So you represent to this Court and to the jury that you've told him, I've got a gun and I'm not afraid to use it on you?

[Couch]:            Uh, yes, that's exactly what I'm saying.  I've never said that.

[Counsel]:          Okay.  Uh, and in fact when you said about the Morgan County Sheriff that was because

you and Angela were trying to – to raise other criminal accusations against Mr. Kochowiec; isn't that accurate?

[Couch]: That I was trying to raise criminal actions against him?

[Counsel]: You and Angela.

[Couch]: No, ma'am.

[Counsel]: Was Angela trying to?

[Couch]: I can't answer for Angela.

[Counsel]: Okay. Isn't it true that she had pursued something in Morgan County and filed something against him saying there's a protective order and in fact there wasn't a protective order in place?

[Couch]: Yes, there was a protective order and yes, she did give that information to the Sheriff's Department and they arrested him, she didn't.

[Counsel]: Was it in fact that case dismissed in Morgan County because there was no protective order?

[Couch]: Uh, that was dismissed because Morgan County makes you redo it but Marion

|  |  |
|---|---|
| | County doesn't. And it was in two different counties. |
| [Counsel]: | I'm asking a different question. It was dismissed and – |
| [Couch]: | Yes, it was dismissed. |
| [Counsel]: | -- there was no protective order; is that correct? |
| [Couch]: | There was a protection order. |
| [Counsel]: | Okay. |
| [Couch]: | But he was not re-served -- |
| [Counsel]: | Okay. |
| [Couch]: | -- through Morgan County. |
| [Counsel]: | So when you were going up the stairs at the boys' basketball game, you said Morgan County wants you back, you were referencing some other - |
| [Couch]: | No, I said he – they would like him back. |
| [Counsel]: | What were you referring to? |

| [Couch]: | He was – he was laughing at me. And he's done threatened me over the internet that he was gonna shoot me if I came to Haughville - |
| [Counsel]: | Okay. |
| [Couch]: | -- where he lives. But he's a felon; he's not suppose to have a gun so how is he going to shoot me? |

Tr., Vol. II at 141-43. Defense counsel objected to Couch's reference to Kochowiec's criminal history. The following sidebar discussion ensued:

| [Defense Counsel]: | It looks like to me it's a mistrial. |
| [The Court]: | Are you saying it's a violation of the Motion in Limine? |
| [Defense Counsel]: | (Inaudible). |
| [State]: | (Inaudible). |
| [Defense Counsel]: | I didn't ask him that. (Inaudible). |
| [The Court]: | Well you did ask him about a gun. . . . You did ask him about a gun; you did ask him about – you did ask him about protective orders. You asked him about threatening him in the past. I mean you're – you're – |
| [Defense Counsel]: | I have to get into his history. I didn't ask him (inaudible). |

[The Court]:        You asked him if he carried a gun.

[Defense Counsel]: Him, not Mr. Kochowiec.

[The Court]:        If you asked him if he carried a gun, you asked him –

[Defense Counsel]: Yes, Mr. Couch.

[The Court]:        You?

[Defense Counsel]: Yes. (Inaudible) Mr. Kochowiec carried a gun (inaudible) supposed to be carrying a gun.

[The Court]:        He didn't say that.

[Defense Counsel]: He – he just did, yeah.

[The Court]:        No, no, he didn't he carried – he can't carry a gun because he's a felon. He just said he's a felon; he didn't say anything about carrying a gun. I understand but you're the one that opened the door to it, Counsel. You're the one that sit [sic] here and talking about the issues between and criminal history. I mean you're the one that's cracking the door for all this. We didn't have to go into any of this stuff, her basketball games or anything like that. You're the one that's opened the door to all this.

[Defense Counsel]:  (Inaudible).

| | |
|---|---|
| [The Court]: | Well you can't talk about the bad blood and not expect to get into what's gone on before. Counsel, and I don't see how you can walk both sides of that street. |
| [Defense Counsel]: | But he still can't speak about prior criminal convictions from that aspect because that's a violation. |
| [The Court]: | I understand it's about it's a violation of the Motion in Limine that was granted but if you guys are going to walk that line and get right up to it, it – I mean at this point you're the one that's pushed him to that point of talking about it.  I don't see how this is something that we're going to have a mistrial over.  I mean you're asking about his prior things and the minute he steps over the line and says something under questioning from you all, uh, that – we're going to have a mistrial. (Inaudible) I mean I just don't see how that's going to happen. |
| [Defense Counsel]: | I'm just trying to (inaudible). |
| [The Court]: | We can move to strike and I'll admonish the – certainly admonish the jury but I'm not going to grant a mistrial at this point. |

*Id.* at 143-46.  Immediately thereafter, the trial court offered the following admonishment to the jury:

[L]adies and gentlemen, that, last bit of testimony, that was offered, there was some testimony about, possibly Mr. Kochowiec's prior criminal history. I'm going to admonish the jury – that's going to be stricken from the record. The jury is to disregard that. That has absolutely no bearing on this case whatsoever. [T]he jury is to treat that as if that wasn't mentioned and never happened and is not to be considered by you in any way, shape or form in this case. It has no bearing on the case whatsoever. Is everyone clear on that; does everyone understand? Thank you.

*Id.* at 146.

[6] At the conclusion of the one-day trial, the jury found Kochowiec guilty as charged. The trial court entered judgment of conviction and imposed a sentence of 365 days of incarceration with 362 days suspended to probation. Kochowiec now appeals.

# Discussion and Decision

## I. Standard of Review

[7] The grant or denial of a motion for mistrial rests within the sound discretion of the trial court and is reviewed for an abuse of discretion. *Brittain v. State*, 68 N.E.3d 611, 619 (Ind. Ct. App. 2017), *trans. denied*. We afford the trial court great deference on appeal because the trial court is in the best position to evaluate the relevant circumstances of an event and its impact on the jury. *Id*. at 620. To prevail on appeal from the denial of a motion for a mistrial, the appellant must demonstrate that the statement or conduct in question was so

prejudicial and inflammatory that she was placed in a position of grave peril to which she should not have been subjected. *Id*. The declaration of a mistrial is an extreme action that is warranted only when no other action can be expected to remedy the situation. *Kemper v. State*, 35 N.E.3d 306, 309 (Ind. Ct. App. 2015), *trans. denied*.

## II. Prior Bad Acts

[8] Kochowiec contends the trial court erred in denying his motion for mistrial after Couch violated the order in limine by referring to his criminal history, i.e., that he was a "felon," and that the violation was so prejudicial that it denied him a fair trial. Specifically, Kochowiec argues Couch's reference to Kochowiec as a "felon" had a significant effect on the jury given Kochowiec's self-defense argument because "[i]f the jury had never heard that Kochowiec was a felon, they certainly could have seen Kochowiec as the person who was provoked into violence." Corrected Appellant's Brief at 8.

[9] Motions in limine are useful tools to prevent the admission of evidence of prior bad acts pursuant to Indiana Rule of Evidence 404(b), which prohibits the admission of "other crimes, wrongs, or acts . . . to prove the character of a person in order to show action in conformity therewith." *Owens v. State*, 937 N.E.2d 880, 895 (Ind. Ct. App. 2010), *trans. denied.* The rule is intended to prevent the "forbidden inference," whereby the jury uses a defendant's past propensities to determine whether he or she is guilty of the current crime. *Wilhelmus v. State*, 824 N.E.2d 405, 414 (Ind. Ct. App. 2005). Generally,

therefore, we view evidence of a defendant's prior criminal history as highly prejudicial and it should not be admitted. *Hyppolite v. State*, 774 N.E.2d 584, 593 (Ind. Ct. App. 2002), *trans. denied*. Although we agree, of course, that Couch's reference to Kochowiec as a "felon" was improper under Indiana Rule of Evidence 404(b)(1) and a violation of the order in limine, we cannot conclude that the violation was so prejudicial as to place Kochowiec in "grave peril." *Brittain*, 68 N.E.3d at 619.

[10] First and foremost, "The gravity of the peril is measured by the conduct's probable persuasive effect on the jury." *Pittman v. State*, 885 N.E.2d 1246, 1255 (Ind. 2008). Here, the trial court made no observations regarding the effect Couch's reference to Kochowiec as a "felon" had on the jury and thus we cannot defer to the trial court's determination of this issue. *Lehman v. State*, 777 N.E.2d 69, 73 (Ind. Ct. App. 2002). Given the totality of the evidence, however, we think it unlikely the violation had any significant effect on the jury. *See Pittman,* 885 N.E.2d at 1255 (holding it was unlikely that a State witness's reference to the defendant having served time in prison "had any significant effect on the jury" given the evidence presented).

[11] In addition to Couch's testimony, the State produced the testimony of Andrew Arrowood, a local minister who had stopped for gas while returning from vacation with his family. Arrowood testified that as Kochowiec left the gas station, Couch pursued his vehicle on foot while recording the events on his cell phone. Kochowiec became agitated and yelled at Couch to stop. Arrowood left the gas station to approach the scene and Kochowiec exited his car so that

both he and Couch were standing in traffic. Kochowiec and Couch were yelling at each other and Kochowiec appeared "angry." Tr., Vol. II at 103. Arrowood attempted to intervene and asked them to return to their vehicles. Kochowiec then "put his hands on [Couch]," and eventually landed "one devastating punch." *Id.* Arrowood did not see Couch hit Kochowiec at all. The State also presented Couch's cellphone recording depicting the events leading up to the parties' confrontation. *Id.* at 125, State's Exhibit 1. Considering the totality of the evidence, therefore, we cannot conclude the violation was so prejudicial as to place Kochowiec in "grave peril." *Brittain*, 68 N.E.3d at 619; *see James v. State,* 613 N.E.2d 15, 22 (Ind. 1993) ("On appeal, where the jury's verdict is supported by independent evidence of guilt such that we are satisfied that there was no substantial likelihood that the evidence in question played a part in the defendant's conviction, any error in admission of prior criminal history may be harmless.")

[12] Second, we adhere to "strong presumptions that juries follow courts' instructions and that an admonition cures any error," *Lucio v. State*, 907 N.E.2d 1008, 1011 (Ind. 2009), so reversible error will seldom be found if the trial court has admonished the jury to disregard a statement made during the proceedings, *Warren v. State*, 757 N.E.2d 995, 999 (Ind. 2001). Here, the trial court offered a prompt admonishment, instructing the jury that it was to disregard Couch's statement and that it had "absolutely no bearing on this case whatsoever" and that it was "to treat that as if that wasn't mentioned and never happened and is not to be considered . . . in any way, shape or form in this case." Tr., Vol. II at

146. On appeal, Kochowiec argues the problem with the trial court's admonishment "is that it confirms for the jury that Kochowiec had a 'prior criminal history,'" which Kochowiec describes as "the proverbial skunk in the jury box." Corrected Appellant's Br. at 9 (citing *United States v. Lowis*, 174 F.3d 881, 885 (7th Cir. 1999) ("If you throw a skunk into the jury box, you can't instruct the jury not to smell it.")). To the contrary, however, the trial court stated, "there was some testimony about *possibly* Mr. Kochowiec's prior criminal history." Tr., Vol. II at 146 (emphasis added). We do not view the trial court's admonishment as confirming the fact that Kochowiec had a prior criminal history, and even if could be perceived as such, Kochowiec failed to object to the court's admonishment on that basis or to cite precedent that such an admonishment would be inadequate. Accordingly, we conclude the trial court's admonishment was sufficient to cure any error.

[13]     Third, as the trial court observed, Couch's reference to Kochowiec's criminal history came during a line of questioning by defense counsel regarding the hostility between the two men, prior threats, Couch's possession of a gun, and prior legal involvement between the two. As such, we view Couch's statement as an inadvertent disclosure rather than a spontaneous, willful violation of the order in limine. *See Greenlee v. State,* 655 N.E.2d 488, 490 (Ind. 1995) (noting whether the testimony was intentionally injected or inadvertent plays a role is determining whether a violation of an order in limine merits a new trial). Even more telling, however, is the fact that Couch's reference came in response to an opened-ended question, namely, "What were you referring to?" Tr., Vol. II at

143. As Chief Judge Brook aptly noted in his separate concurring opinion in *Lehman*,

> A cardinal rule of effective trial advocacy is never to ask a question to which one does not know the answer. Indiana Evidence Rule 611 permits the use of leading questions on cross-examination, and a well-prepared advocate will skillfully employ this technique to control adverse witnesses and thereby shape their testimony to her client's advantage.

777 N.E.2d at 74 (Brook, C.J., concurring). By asking Couch, "What were you referring to?," defense counsel lost control of the witness and may well have invited any error. Tr., Vol. II at 143. In any event, effective advocates will be wise to heed Chief Judge Brook's advice by "meticulously plotting a course for a witness's testimony on cross-examination and by using carefully chosen leading questions" thereby avoiding "the possibility of a witness violating an order in limine" and the possibility of mistrial. *Lehman*, 777 N.E.2d at 74.

[14] Fourth and finally, Couch's reference was fleeting, vague, and the State made no further mention of it during the trial. *See Lucio*, 907 N.E.2d at 1011 (holding that denial of mistrial was not abuse of discretion where statement was fleeting, inadvertent, and only a minor part of the evidence against the defendant and the trial court admonished jury to disregard the statement). Accordingly, we conclude the trial court did not abuse its discretion by denying Kochowiec's motion for a mistrial.

# Conclusion

For the reasons discussed above and in light of the trial court's wide discretion, the totality of the evidence, and the trial court's admonishment to the jury, we conclude the trial court did not abuse its discretion by denying Kochowiec's motion for a mistrial.

Affirmed.

Najam, J., and Altice, J., concur.