# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 05 2019, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Matthew J. McGovern
Anderson, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Supervising Deputy Attorney
General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Troy Gaines,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff* | September 5, 2019<br><br>Court of Appeals Case No.<br>18A-CR-1560<br><br>Appeal from the Crawford Circuit Court<br><br>The Honorable Sabrina R. Bell, Judge<br><br>Trial Court Cause No.<br>13C01-1712-F5-23 |

**Altice, Judge.**

## Case Summary

[1] Troy Gaines appeals his conviction and sentence for four counts of Level 5 felony sexual misconduct with a minor. He presents three issues for our review:

1. Did the trial court abuse its discretion by denying two requests for mistrial after witnesses for the State violated an order in limine?

2. Did admission of evidence regarding the complaining child witness's accusations through several witnesses prior to her own testimony at trial amount to fundamental error?

3. Is Gaines's twenty-year aggregate sentence inappropriate in light of the nature of his offense and his character?

[2] We affirm.

## Facts & Procedural History

[3] Gaines and his ex-wife (Mother) have two daughters together, GA.G. (born in July 2002) and GI.G. (born in September 2005). They shared physical custody of the children, with varying parenting time, following their divorce around 2013. In 2015, Gaines was involved in a serious workplace accident, which permanently injured his foot and back and made him unable to work.

[4] Around August 2016, when GA.G. was fourteen years old, Gaines moved into a mobile home, where the children lived with him part time. He often wore short robes around the trailer in the evening with no underwear, exposing his penis to the children, which made them feel uncomfortable. He also used

alcohol and marijuana with GA.G. that he supplied. GA.G. preferred living with Gaines because he was not as strict as Mother.

[5] Gaines initially did not have furniture except for one queen mattress, a table, and some chairs that were in the living room. All three of them would sleep on the mattress together, but sometimes GA.G. slept in a chair. On more than one occasion, while they slept together on the mattress in the living room and with GI.G. asleep in the same room, GA.G. awoke to Gaines "having [her] hand on his penis and rubbing him." *Transcript Vol. 3* at 172. Another time, when she was sleeping in the chair in the living room, GA.G. awoke to Gaines's hand inside her shirt and bra touching her breasts.

[6] A month or so after moving into the trailer, Gaines obtained beds for each of the three bedrooms, and they each moved into their own room. Shortly thereafter, however, a family of five moved in with them, and GA.G. and GI.G.'s beds were moved into Gaines's bedroom. This family lived with them for several months. During this time, although Gaines had his own bed in the room, he would often sleep with GA.G. in her bed. She awoke one time to Gaines rubbing her vagina with his hand inside her shorts and underwear. She "pulled his hand out and asked him what he was doing and that it wasn't right." *Id*. at 175. This was the only time that he touched her vagina. However, she awoke other times to him placing her hand on his penis. GI.G. was in her own bed in the same room during the instances.

[7] The other family moved out at the beginning of June 2017, and GA.G. and GI.G. moved back to their own rooms. Gaines would come into GA.G.'s room, get into bed with her while she slept, and put her hand on his penis. Twice after GA.G. turned fifteen, Gaines also came into the shower while GA.G. was showering. The first time, he grabbed her wrist and tried to make her touch his penis, but GA.G. quickly left the shower. The second time, in the shower in the other bathroom, Gaines grabbed GA.G.'s wrist and put her hand on his erect penis. He also wrapped his arm around her waist and tried to "bring [her] back in to him". *Id.* at 168. She asked him to stop, and he responded that "it was normal". *Id.* at 167.

[8] By the fall of 2017, "it started getting worse" with Gaines sleeping in GA.G.'s bed "every night" that she was there. *Id.* at 214. GA.G. testified, "I didn't like it cause I was scared that he was going to make me touch him more." *Id.* His actions affected her sleep, and on November 2, 2017, a teacher observed GA.G. sleeping in class and seemingly not being herself. He also believed he detected the odor of marijuana. This teacher, Andrew Howell, spoke with GA.G. in the hall during first period. Based on this conversation, Howell contacted Brandy Stroud – the dean of students – who, after speaking with GA.G. that morning, immediately filed a report with the Indiana Department of Child Services (DCS) regarding suspected child abuse. In this report, Stroud indicated that GA.G. expressed being worried that Gaines would sexually abuse her, though GA.G. denied that he had ever touched her inappropriately.

[9] DCS family case manager (FCM) Joshua Speer, who had been working with the family regarding other issues, came to the school that day and spoke with GA.G. She told FCM Speer that she did not feel safe at Gaines's home, that Gaines walked around with his robe open exposing "all his private parts", and that "she feared being molested". *Transcript Vol. 2* at 132, 138. Later that day, FCM Speer also spoke with GI.G., who acknowledged that Gaines would walk around the trailer in a robe, which allowed her to see his penis on occasion.

[10] FCM Speer communicated his conversation with GA.G. to Mother and spoke with Mother regarding a safety plan. After Mother picked up GA.G. from school, GA.G. disclosed additional information to her, including that Gaines had been inappropriately touching her. Mother relayed this information to FCM Speer that night and took GA.G. to the sheriff's department the next morning, Friday, November 3, 2017. GA.G. disclosed to Sheriff Jeff Howell that about a month prior Gaines had begun exposing himself to her and touching her inappropriately and forcing her to touch him. GA.G. also reported, among other things, that he had tried to shower with her but she was able to get out and lock herself in the bedroom. Based on this information, Sheriff Howell filed a report with DCS that same day.

[11] The following Monday, November 6, 2017, Felicia Buechler conducted a forensic interview of GA.G. During this interview, GA.G. disclosed additional details, including that Gaines had recently made her touch his penis in the shower and that on more than one occasion Gaines inappropriately touched GA.G.'s vagina or made her touch and rub his penis.

[12] Indiana State Police Detective Shane Staggs contacted Gaines after GA.G.'s forensic interview and arranged a meeting. This meeting occurred inside Gaines's residence on November 10, 2017. Gaines gave a recorded statement, which contained vague but incriminating admissions. He acknowledged showering with GA.G. once "months ago" and touching her vagina once over her clothes while she slept in a chair in the living room. *Transcript Vol. 3* at 71. He also admitted that GA.G. had touched his penis more than once, but he claimed that he was asleep each time this started.

[13] On December 8, 2017, the State charged Gaines with two counts of Level 5 felony sexual misconduct with a minor. Count 1 was based on Gaines's touching of GA.G.'s vagina, and Count 2 was based on him having her touch his penis. In April 2018, Detective Staggs met with GA.G., who indicated that Gaines had engaged in sexual misconduct with her about fifteen times. As a result, the State, with leave of the trial court, filed nine additional counts of Level 5 felony sexual misconduct with a minor. Counts 3 and 4 alleged that Gaines touched GA.G.'s breasts, and Counts 5 through 11 each alleged that Gaines had GA.G. touch his penis.

[14] A jury trial commenced on May 17 and concluded on May 22, 2018. The jury found Gaines guilty of four counts (Counts 1, 2, 3, and 5) and not guilty of Count 4. The jury was unable to reach verdicts on the remaining counts. Accordingly, the trial court entered judgments of conviction for Counts 1 through 3 and 5, an order of acquittal for Count 4, and dismissed Counts 6 through 11. On June 12, 2018, the trial court sentenced Gaines to five years on

each count and ordered them to run consecutively for an aggregate term of twenty years in prison. Gaines now appeals. Additional information will be provided below as needed.

## Discussion & Decision

## 1. Denial of Motion for Mistrial

Gaines initially argues that the trial court abused its discretion when it refused two requests for a mistrial after witnesses for the State violated an order in limine that prohibited any mention, either directly or indirectly, regarding "any evidence of the protective order being entered".[1] *Appendix Vol. 2* at 125. He asserts that the prosecutor flagrantly violated the order, placing Gaines in grave peril, and that the trial court's admonishments were inadequate.

"A mistrial is an extreme remedy granted only when no other method can rectify the situation." *Brooks v. State*, 934 N.E.2d 1234, 1243 (Ind. Ct. App. 2010), *trans. denied*. We accord great deference to the trial court's ruling on a mistrial motion, reviewing only for an abuse of discretion, because the trial court is in the best position to evaluate the relevant circumstances of an event and its impact on the jury. *See Pittman v. State*, 885 N.E.2d 1246, 1255 (Ind. 2008); *Brooks*, 934 N.E.2d at 1243. "A mistrial is appropriate only when the questioned conduct is 'so prejudicial and inflammatory that [the defendant] was

---

[1] The trial court entered a protective order in this case on December 12, 2017, protecting GA.G. from any contact with Gaines.

placed in a position of grave peril to which he should not have been subjected.'" *Pittman*, 885 N.E.2d at 1255 (quoting *Mickens v. State*, 742 N.E.2d 927, 929 (Ind. 2001)). "The gravity of the peril is measured by the conduct's probable persuasive effect on the jury." *Id*.

[17] On appeal from the denial of a mistrial motion, "the defendant has the burden to demonstrate both that he was placed in a position of grave peril to which he should not have been subjected and that no other remedy can cure the perilous situation in which he was placed." *Brooks*, 934 N.E.2d at 1243. "Reversible error is seldom found when the trial court has admonished the jury to disregard a statement made during the proceedings, because a timely and accurate admonition to the jury is presumed to sufficiently protect a defendant's rights and remove any error created by the objectionable statement." *Lehman v. State*, 777 N.E.2d 69, 72 (Ind. Ct. App. 2002).

[18] The first instance that Gaines claims warranted a mistrial occurred during FCM Speer's testimony. FCM Speer had just testified regarding his discussion with GA.G. at school on November 2 and that the forensic interview was scheduled for November 6. The following colloquy between the prosecutor and FCM Speer then took place:

> Q    What do you, what's your plan for those four days?
>
> A    Uh, my plan for those four days, I staffed it with my supervisor and our plan together was to make sure that GA.G. and GI.G. did not go back with Troy Gaines because there was a huge safety concern there. Um….

Q      Okay.

A      Especially after the 3rd, November 3rd, uh, so what we did was we got [Mother] to work with the victim's advocate to file an emergency protective order.

*Transcript Vol. 2* at 139. Gaines immediately moved for a mistrial based on the improper reference to a protective order. Following a discussion outside the presence of the jury, the trial court denied the motion for a mistrial and admonished the jury, upon their return, to "disregard the witnesses' [sic] last statement". *Id*. at 145.

[19]    The second instance occurred five witnesses later in the middle of GA.G.'s testimony on direct examination by the State. GA.G. testified about her report to the sheriff on November 3 and read the written statement she had provided to the sheriff. The prosecutor then asked her if the sheriff did or said anything to GA.G. after she wrote her statement. GA.G. responded, "He came back in there and he told me a story about himself and then we started talking about the restraining order, I think." *Transcript Vol. 3* at 158. Gaines again moved for a mistrial. In denying the motion, the trial court observed:

GA.G. has just mentioned restraining order. So far she's not testified as to whether one was granted or went into those discussions. I believe [the prosecutor's] question was what did you talk about that night or what did you do and she said we talked about the restraining order. I don't think there's been any testimony that there was one granted or she went into the details of that. So I will admonish the jury to disregard her last answer and [prosecutor] you need to work with the witness on that

> testimony in staying clear of that testimony as to not violate any
> more Motions in Limine.

*Id*. at 161.

[20] Contrary to Gaines's assertion on appeal, it is apparent that the two incidents set out above were not flagrant or deliberate attempts by the State to prejudice him. They, rather, amounted to innocent and minor violations of the order in limine. *See Pittman*, 885 N.E.2d at 1255 ("Innocent violation of a motion in limine does not automatically warrant a mistrial."). Moreover, in neither instance did the witness testify that a protective order was actually issued and, in fact, the record does not suggest that one had been issued by November 3, 2017, the time period about which the witnesses were testifying. Given the evidence presented against Gaines, including GA.G.'s allegations as of November 3, 2017, we think it highly unlikely that Speer's and GA.G.'s passing and vague references to seeking a protective/restraining order had any significant effect on the jury. *See id*. (holding that witness's implicit reference to defendant's prior incarceration, though unfortunate and in violation of a motion in limine, did not have any significant effect on the jury and, therefore, trial court did not abuse its discretion by denying the motion for mistrial).

[21] Gaines was not placed in grave peril as a result of the improper testimony and, therefore, the trial court did not abuse its discretion by denying the motions for mistrial and instructing the jury to disregard said testimony. *See Owens v. State*, 937 N.E.2d 880, 895 (Ind. Ct. App. 2010) ("Even where a witness violates an

order in limine, a trial court may determine that a mistrial is not warranted and, instead, admonish the jury to disregard the improper testimony."), *trans. denied*.

## 2. Fundamental Error

[22] Gaines next contends that the State improperly presented, through other witnesses, the drumbeat repetition of GA.G.'s statements prior to her testifying and being subject to cross examination.[2] Acknowledging that he did not preserve the issue below, Gaines claims that admission of this evidence amounted to fundamental error.

[23] The fundamental error exception to the contemporaneous objection rule is "extremely narrow" and applies only in egregious circumstances "when the error constitutes a blatant violation of basic principles, the harm or potential for harm is substantial, and the resulting error denies the defendant fundamental due process." *Greer v. State*, 115 N.E.3d 1287, 1289 (Ind. Ct. App. 2018) (quoting *Delarosa v. State*, 938 N.E.2d 690, 694 (Ind. 2010)). For error to be fundamental, "irremediable prejudice to a defendant's fundamental right to a fair trial must be immediately apparent in the disputed evidence". *Torres v. State*, 12 N.E.3d 272, 274 (Ind. Ct. App. 2014), *trans. denied*. In other words,

---

[2] He directs us to *Modesitt v. State*, 578 N.E.2d 649 (Ind. 1991), in which our Supreme Court adopted Fed. R. Evid. 801(d)(1). After *Modesitt*, in 1994, the Indiana Rules of Evidence were codified, including Ind. Evidence Rule 801(d)(1), which allows a declarant-witness's prior statement into evidence as substantive evidence under limited circumstances. Gaines never actually applies this rule or explains why Evid. R. 801(d)(1)(B) (allowing statements consistent with declarant's testimony offered to rebut express or implied allegation of recent fabrication) does not apply in this case.

Gaines must establish on appeal that the trial court should have raised the issue sua sponte. *See Merritt v. State*, 99 N.E.3d 706, 709 (Ind. Ct. App. 2018), *trans. denied*.

[24] On appeal, he complains that the State presented the drumbeat repetition of the same accusations through several witnesses, specifically FCM Speer, Sheriff Howell, and the forensic interviewer. We initially observe that the statements GA.G. made to these individuals varied, with limited details given to FCM Speers (she feared being molested and for her safety), more details provided to Sheriff Howell the next day (for about a month, Gaines had been exposing himself, inappropriately touching her and making her touch him, and once tried to shower with her), and then more accusations in the forensic interview a few days later (Gaines had made GA.G. touch his penis in the shower and elsewhere, and he had touched her vagina).

[25] Gaines's defense seized on the evolving nature of GA.G.'s accusations. During his opening statement, defense counsel informed the jury:

> What you will hear is one witness begin a statement, begin a story and that story quickly starts to spiral. She gives a statement on November 2. She gives a statement later on November 2. She gives a statement on November 3. She gives a statement on November 6. All of those statements are different. All of those statements change. Then as we continue progressing, I talk with her April 24. Her statement changes. You're going to hear that. I talked with her again April 27th. Her statement changes again. You're also going to hear evidence of the custody, parenting time dispute between mom and dad and these two little girls. They're in the middle. They're in the middle. You're going to hear why

> GA.G. was pulled out of class on November 2. And that's when the story begins.

*Transcript Vol. 2* at 78-79. Thereafter, defense counsel cross examined FCM Speer extensively (and in significantly more detail than the prosecutor) regarding GA.G.'s various statements to FCM Speer and others made between November 2 and 6, 2017. Defense counsel also thoroughly questioned GA.G. at trial regarding her varying statements and her testimony. Then in closing argument, counsel focused entirely on attacking GA.G.'s credibility based on the evolving nature of her reports to different people over time.

[26] In light of the obvious and consistent defense theory presented throughout trial, we find disingenuous Gaines's argument on appeal that the trial court should have sua sponte acted to foreclose testimony by the witnesses regarding GA.G.'s prior statements to them. The record demonstrates that the trial court properly did not interject itself on Gaines's behalf.

### 3. Inappropriate Sentence

[27] Finally, Gaines contends that his twenty-year aggregate sentence is inappropriate in light of his character and the nature of his offenses. We may revise a sentence authorized by statute if, after due consideration of the trial court's decision, we find the sentence inappropriate in light of the nature of the offense and the character of the offender. Ind. Appellate Rule 7(B). Indiana's flexible sentencing scheme allows trial courts to tailor an appropriate sentence to the circumstances presented and the trial court's judgment "should receive

considerable deference." *Cardwell v. State*, 895 N.E.2d 1219, 1224 (Ind. 2008). The principal role of appellate review is to attempt to "leaven the outliers." *Id.* at 1225. Whether we regard a sentence as inappropriate at the end of the day turns on "our sense of culpability of the defendant, the severity of the crime, the damage done to others, and myriad other factors that come to light in a given case." *Id.* at 1224. Deference to the trial court "prevail[s] unless overcome by compelling evidence portraying in a positive light the nature of the offense (such as accompanied by restraint, regard, and lack of brutality) and the defendant's character (such as substantial virtuous traits or persistent examples of good character)." *Stephenson v. State*, 29 N.E.3d 111, 122 (Ind. 2015). The burden is on the defendant to persuade us his sentence is inappropriate. *Childress v. State*, 848 N.E.2d 1073, 1080 (Ind. 2006).

[28] For each of his Level 5 felony convictions, Gaines faced a sentencing range of one to six years, with the advisory sentence being three years. *See* Ind. Code § 35-50-2-6(b). The trial court sentenced him to consecutive five-year terms of imprisonment for each of his four convictions, resulting in an aggregate sentence of twenty years. Gaines asks that we revise his sentence by ordering the counts to be served concurrently for a five-year executed sentence. For the reasons set forth below, we find Gaines's request wholly inappropriate.

[29] "The nature of the offense is found in the details and circumstances of the commission of the offense and the defendant's participation." *Croy v. State*, 953 N.E.2d 660, 664 (Ind. Ct. App. 2011). Here, Gaines sexually abused his own fourteen/fifteen-year-old daughter. He did this on many occasions –more than

four – and in multiple ways and locations in the family's home over a period of more than a year. He groomed GA.G. by providing her with marijuana and alcohol, and he regularly walked around the residence exposing his penis while wearing a short robe. Moreover, his sexual abuse of GA.G. regularly occurred while GI.G. slept in the same room. This abuse increased over time to the point where GA.G. could not sleep due to concerns about what her father might do to her while she slept. The ongoing abuse stopped only after GA.G. reported Gaines's conduct to others. We find nothing about the nature of the offenses that makes the twenty-year aggregate sentence inappropriate.

[30] "The character of the offender is found in what we learn of the offender's life and conduct." *Croy*, 953 N.E.2d at 664. When considering the character of the offender, "'one relevant fact is the defendant's criminal history,' and '[t]he significance of criminal history varies based on the gravity, nature, and number of prior offenses in relation to the current offense.'" *Sanders v. State*, 71 N.E.3d 839, 844 (Ind. Ct. App. 2017) (quoting *Garcia v. State*, 47 N.E.3d 1249, 1251 (Ind. Ct. App. 2015), *trans. denied*), *trans. denied*. Gaines's criminal history might be nonviolent but it is far from insignificant or minor. He has two prior felony convictions – Class C felony nonsupport of dependent child (2016) and Level 6 felony residential entry (2016) – and was still on probation at the time he committed the instant offenses. Gaines also has two Class A misdemeanor convictions for invasion of privacy (both in 2013) and one conviction for Class A misdemeanor criminal trespass (2016). Notably, in his second invasion of privacy case, Gaines was ordered as part of his sentence to complete "a Men's

Non Violence program", which implies some history of domestic violence. *Appendix Vol. II* at 196. Gaines's criminal history, which is condensed within the three-year period leading up to the instant offenses, is significant and telling of his poor character. Despite several recent convictions and being on probation, Gaines was undeterred from supplying his young teenage daughter with alcohol and marijuana, exposing his genitalia to both daughters, and repeatedly sexually violating GA.G. over more than a year in the shower or in various rooms throughout the home while she slept.

[31] We reiterate that our task on appeal is not to determine whether another sentence might be more appropriate; rather, the inquiry is whether the imposed sentence is inappropriate. *Barker v. State*, 994 N.E.2d 306, 315 (Ind. Ct. App. 2013), *trans. denied*. Gaines has failed to carry his burden of establishing that his sentence is inappropriate in light of the nature of the offense and his character.

[32] Judgment affirmed.

Kirsch, J. and Vaidik, C.J., concur.